301 S.W.3d 460 (2009)
In the Interest of M.K.S.-V., A Child.
No. 05-08-00568-CV.
Court of Appeals of Texas, Dallas.
December 1, 2009.
Rehearing Overruled January 28, 2010.
*461 Michelle May O'Neil, O'Neal Anderson, Ashely Bowline, Dallas, TX, for Appellant.
Paul Brumley, Jimmy L. Verner, Jr., Verner & Brumley, Dallas, TX, for Appellee.
Before Justices RICHTER, LANG, and MURPHY.

OPINION
Opinion By Justice RICHTER.
We overrule appellant's motion for rehearing. On our own motion, we withdraw our opinion of August 11, 2009 and vacate our judgment of that date. This is now the opinion of the Court.
This appeal involves the dismissal of K.V.'s suit for conservatorship or adoption of M.K.S.,[1] a child born in May 2004 to K.V.'s ex-partner T.S. In four issues, K.V. asks us to decide whether (a) her possession of M.K.S. over a twenty-one month period under an informal agreement somewhat similar to the Standard Possession Order found in section 153.312 of the Texas Family Code constituted "actual care, control, and possession of the child for at least six months" as provided in family code section 102.003(a)(9) for purposes of standing to sue for conservatorship; and (b) the dismissal, without a hearing on the merits, of her claims for breach of the possession agreement, adoption, and equitable adoption by estoppel was improper. We conclude that the trial court erred in its determination that K.V. lacked standing to sue for conservatorship, and therefore erred when it dismissed without hearing K.V.'s claim for breach of the possession agreement. We further conclude that the trial court did not err in its dismissal of K.V.'s claims for adoption and equitable adoption. We affirm the trial court's judgment dismissing the adoption and equitable adoption claims, reverse the judgment as it pertains to K.V.'s standing to sue for conservatorship and the dismissal of her breach of possession claim, and remand *462 the case to the trial court for further proceedings consistent with this opinion.

Background
K.V. and T.S. met in the fall of 1997 and began living together in late 1998. The two talked about rearing a child together and in mid-2003, after the two had received counseling, T.S. became pregnant with M.K.S. through artificial insemination by a sperm donor. T.S. delivered M.K.S. on May 21, 2004 and co-parented M.K.S. with K.V. until August 3, 2005 when the relationship ended and T.S. moved out with M.K.S. Because T.S. and K.V. wanted to maintain some continuity for the child, they agreed on a schedule allowing K.V. regular access to and possession of the child. Under the agreement, M.K.S. would visit K.V. overnight once a week, alternate Sunday afternoons, and on alternate weekends beginning on Friday afternoons during the school year. During the summer, the weekend visits would sometimes start on Thursday afternoon. M.K.S. also visited K.V. on "some holidays."[2] This schedule began August 5, 2005 and continued until April 25, 2007 when T.S. discontinued the visits because K.V. had accessed M.K.S.'s school record against T.S.'s "directive." The following month, K.V. filed suit seeking to be appointed joint managing conservator of M.K.S. or, in the alternative, to adopt her.
Not being a biological parent of M.K.S., K.V. asserted standing to sue for conservatorship under section 102.003(a)(9)as a person who had "actual care, control, and possession of [M.K.S.] for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2008). She further asserted that she was a "parent by estoppel" and had standing to sue for adoption under family code section 102.005(3)as a person who had "actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition." Id. § 102.005(3).
T.S. specially excepted to K.V.'s claims and challenged K.V.'s allegations concerning standing. Following an evidentiary hearing before the associate judge on the issue of standing and an appeal to the trial court, the trial court found K.V. did not have standing to pursue her suit for conservatorship but had standing to pursue the adoption. The trial court found K.V. had standing to pursue the adoption not under section 102.005(3), but under section 102.005(5)having had "substantial past contact with the child sufficient to warrant standing to do so."[3]Id. § 102.005(5). Based on its findings, the trial court ordered K.V. to amend her petition to assert adoption only. See id. § 102.001(b).
K.V. complied, asserting standing under section 102.005(5) and claims for (1) adoption under family code section 162.001, (2) adoption by estoppel, and (3) breach of contract based on an alleged agreement by T.S. that K.V. would be able to adopt M.K.S. K.V. also asserted T.S. breached a contract, as shown by the possession *463 agreement, that K.V. would have possession of and access to M.K.S.
T.S. subsequently moved to dismiss K.V.'s adoption claims, arguing T.S.'s parental rights had not been and would not be terminated, K.V. had never married T.S. and was not a step-parent, and T.S. would not consent and had not consented to the adoption. T.S. also moved to dismiss K.V.'s claim for the breach of the possession agreement, arguing it amounted to a conservatorship claim for which K.V. lacked standing. See generally TEX. FAM.CODE ANN. ch. 153 (providing for possession of or access to a child only to conservators of the child); see also In re P.D.M., 117 S.W.3d 453, 455 (Tex.App.-Fort Worth 2003, pet. denied) (en banc) (noting party's initial right to possession of a child is governed by family code chapter 153). Following a hearing on the motion, the trial court dismissed "all claims" asserted by K.V. and "confirm[ed] the previous finding that [K.V.] lacks standing to pursue her ... claims for conservatorship." A final judgment was entered on April 4, 2008, and the court made written findings of fact and conclusions of law on May 21, 2008. This appeal followed.

Standing
In her first issue, K.V. challenges the court's determination that she lacked standing to sue for conservatorship. She makes two arguments. First, she maintains she satisfied the standing requirement by virtue of her weekly overnight possessions of M.K.S. and possessions on "some holidays," alternate weekends, and alternate Sundays.[4] Second, and in the alternative, she argues T.S. is estopped to assert standing as a bar to this suit because of T.S.'s "actions and explicit representations to K.V.... including the stipulated possession agreement."
A person seeking conservatorship of a child must have standing to bring suit. See In re S.S.J.-J., 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.). Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex. 1993); In re M.P.B., 257 S.W.3d 804, 808 (Tex.App.-Dallas 2008, no pet.). The standard of review applicable to subject matter jurisdiction also applies to standing. Tex. Ass'n of Bus., 852 S.W.2d at 446. Under that standard, the pleader is required to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. Tex. Ass'n of Bus., 852 S.W.2d at 446. On review, appellate courts "construe the pleadings in favor of the plaintiff and look to the pleader's intent." Tex. Ass'n of Bus., 852 S.W.2d at 446. Subject to two exceptions in the context of suits affecting the parent-child relationship (SAPCR), standing cannot be conferred by consent. In re K.K.C., 292 S.W.3d 788, 790 n. 1 (Tex.App.-Beaumont 2009, no pet. h.); In re H.G., 267 S.W.3d 120, 124 (Tex. App.-San Antonio 2008, pet. denied).[5]
*464 In Texas, standing in the context of SAPCRs is governed by the family code, and a party seeking relief in such suits must plead and establish standing within the parameters of the language used in the code. See H.G., 267 S.W.3d at 124; see also TEX. FAM.CODE ANN. §§ 102.003-.007. If a party fails to do so, the trial court must dismiss the suit. See In re C.M.C., 192 S.W.3d 866, 870 (Tex.App.-Texarkana 2006, no pet.). A party's standing to pursue a cause of action is a question of law. See North Alamo Water Supply Corp. v. Tex. Dep't of Health, 839 S.W.2d 455, 457 (Tex.App.-Austin 1992, writ denied). Therefore, we review de novo a trial court's dismissal based on lack of standing. See Coons-Andersen v. Andersen, 104 S.W.3d 630, 633-34 (Tex.App.-Dallas 2003, no pet.); Doncer v. Dickerson, 81 S.W.3d 349, 353 (Tex.App.-El Paso 2002, no pet.).
Section 102.003(a)(9) of the family code provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may file an original suit requesting conservatorship. See TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2008). "In computing the time necessary for standing, the court may not require that the time be continuous and uninterrupted, but shall consider the child's principal residence during the relevant time period preceding the date of commencement of the suit." TEX. FAM.CODE ANN. § 102.003(b) (Vernon 2008). A "principal residence" is (1) a fixed place of abode; (2) occupied consistently over a substantial period of time; (3) which is permanent rather than temporary. Doncer, 81 S.W.3d at 362; M.P.B., 257 S.W.3d at 809. Whether a party satisfies the standing requirement under section 102.003(a)(9) is necessarily fact specific and determined on a case-by-case basis. M.P.B., 257 S.W.3d at 809.
K.V. relies on Doncer, 81 S.W.3d at 349 and M.P.B., 257 S.W.3d at 804 in support of her argument that the requirements of section 102.003(a)(9) have been met. In Doncer, a step-motherDoncersought conservatorship of her six-year old step-son Mikey, after her husband Mikey's fatherpassed away. Doncer, 81 S.W.3d at 351. Doncer's deceased husband and his ex-wife Dickerson were joint managing conservators of Mikey. Id. Mikey's primary residence was with Dickerson, but Doncer's deceased husband had Mikey "51 percent of the time in even-numbered years and nearly 48 percent of the time in odd-numbered years" under the conservatorship agreement which awarded him slightly more periods of possession than the standard possession order.[6]Id. at 351, 352. Comparing the term "principal residence" as used in the determination of the six-month possession requirement in section 102.003(a)(9) with the term "primary residence" "as defined in a joint managing conservatorship" in connection with whom the child lives once conservators have been appointed, the court concluded the term "principal residence" means a "fixed place of abode, occupied consistently over a substantial period of time, which is permanent rather than temporary." Id. at 359-61. The court further concluded Doncer had standing to sue, having established her home was Mikey's principal residence for a period of at least six months before she filed suit. Id. at 362. The court reasoned that the conservatorship agreement evinced the parties' intent that the child would *465 occupy the Doncer home "consistently, over a substantial period of time" and not as a "temporary arrangement to facilitate momentary housing difficulties, inconvenient travel schedules, the pursuit of higher education, or the inability to provide child care." Id.
In M.P.B., a grandmother sought joint managing conservatorship of her granddaughter, twenty-one-month old M.P.B., following the death of M.P.B.'s mother. M.P.B., 257 S.W.3d at 807. M.P.B. and her mother had lived with the grandmother for three months before moving to a nearby apartment. Id. at 809. Then, over the next seventeen months, M.P.B. spent every Wednesday night, every weekend beginning "sometimes" on Thursdays and "sometimes" on Fridays, holidays, and vacations at the grandmother's house. Id. Although grandmother shared actual care, control, and possession of M.P.B. with the granddaughter's mother, a panel of this Court concluded that the grandmother had standing under section 102.003(a)(9) to seek appointment as joint managing conservator of M.P.B. because she provided M.P.B. a permanent rather than temporary residence which the granddaughter occupied consistently over a substantial period of time. Id.
In the instant case, the record shows that the possession agreement between K.V. and T.S. shared characteristics of a standard possession order. See TEX. FAM. CODE ANN. § 153.312 (Vernon 2008). From August 5, 2005 through April 25, 2007, during the school year, M.K.S. visited K.V. overnight once a week, alternative Sunday afternoons, and alternative weekends beginning on Friday afternoons. During the summer, the weekend visits sometimes started on Thursday afternoon. M.K.S. also visited K.V. on some holidays.
M.K.S. had her own room at K.V.'s house where she kept her toys, movies, a television, and an aquarium. She had a sandbox and a slide set outside. K.V. also modified her house by building a wrap around deck with gates on it so that the child would have a safe environment in which to play. There were occasions when K.V. would pick the child up from school when she was sick and then purchase and administer medication. K.V. was listed as a parent on the child's school records. K.V. also attended school activities and the teachers were aware that K.V. would pick the child up from school during her periods of possession. Witnesses testified that T.S. has referred to K.V. as the child's mother and treats K.V. as one of the child's parents. K.V. also established a college fund for M.K.S. After the relationship between K.V. and T.S. ended, the couple continued to attend church with the child as a family unit. T.S. discontinued K.V.'s visits with M.K.S. on April 25, 2007. The original petition was filed on May 23, 2007.
Like M.P.B., the record does not suggest this pattern of possession and caregiving was intended to be a temporary arrangement. See M.P.B., 257 S.W.3d at 809. To the contrary, the possession agreement and the parties' actions evinced an intent that the child occupy K.V.'s home consistently over a substantial period of time. Therefore, we conclude the trial court erred in determining that K.V. did not establish the six month period of actual care, custody, and control requisite to establish her standing to file an original SAPCR petition. K.V.'s first issue is sustained.

Dismissal of Other Claims

Claim for Breach of the Possession Agreement
In her second issue, K.V. asserts the court erred in dismissing her claim for *466 breach of the possession agreement without a hearing on the merits. We agree. We have concluded that K.V. has standing to assert a claim for conservatorship. Therefore, the trial court erred when it dismissed her claim for breach of the possession agreement without a hearing on the merits. See UNITED STATES CONST. amend. XIV (due process); TEX. CONST. ART. I, § 13 (open courts provision), § 19 (due process); In re C.M.C., 192 S.W.3d 866, 869 (Tex.App.-Texarkana 2006, no pet.) (stating dismissal not an appropriate means for deciding merits of a case). K.V.'s second issue is sustained.

Adoption Claims
In her third and fourth issues, K.V. asserts the court erred in dismissing her claims for adoption without a hearing on the merits and after finding she had standing. As stated, T.S. moved to dismiss K.V.'s adoption claims on the ground, among others, that she would not consent and had not consented to the adoption. Consent is a requirement, separate from standing, for adoption under family code section 162.001 and also for adoption by estoppel. See TEX. FAM.CODE ANN. § 162.001; Luna v. Rodriguez, 906 S.W.2d 576, 579 (Tex.App.-Austin 1995, no writ) (agreement to adopt essential element of adoption by estoppel). At the hearing on standing, T.S. denied consenting that K.V. could adopt M.K.S. Numerous other witnesses, many of whom testified on K.V.'s behalf, also testified they were unaware of any agreement to adopt. When asked for evidence of any agreement to adopt, K.V. testified about acts by T.S. that showed, in K.V.'s opinion, an agreement to adopt. Such acts included naming M.K.S. at birth M.K.S.-V. so that M.K.S. would share K.V.'s name; holding K.V. out as M.K.S.'s mom; and, "talking about [K.V.] adopting [M.K.S.]." But K.V. stopped short of testifying to an actual agreement. Without consent or an agreement, however, K.V. cannot adopt M.K.S. and the trial court did not err in dismissing her adoption claims. We resolve K.V.'s third and fourth issues against her.
We affirm the portion of the trial court's judgment dismissing the adoption and equitable adoption claims, reverse the portion of the judgment determining K.V. lacks standing to sue for conservatorship and dismissing the claim for breach of the possession agreement, and remand the case to the trial court for further proceedings consistent with this opinion.
NOTES
[1] M.K.S.'s name at birth was M.K.S.-V. Although her name was legally changed to M.K.S. prior to the filing of this suit, the judgment of dismissal is captioned "In the Interest of M.K.S.-V."
[2] The record contains testimony that K.V. and T.S. "divided major holidays" as well as testimony that K.V. had M.K.S. only on holidays that "happened to fall" during K.V.'s period of visitation.
[3] This section was formerly section 102.005(4). See Act of Mar. 21, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 102.005(4), 1995 Tex. Gen. Laws 113, 125. The redesignation became effective September 1, 2007. See Act of June 15, 2007, 80th leg., R.S., ch. 1406, § 3, 2007 Tex. Gen. Laws 4814, 4815. Having filed her suit before the effective date, K.V.'s petition is governed by the former law. Id. § 3(b). Because the change is simply one of renumbering, however, we refer to the current code section.
[4] K.V. does not challenge the court's implicit finding that she lacked standing under section 102.005(3)as a person having "actual possession and control of the child for not less than two months during the three month period preceding the filing of the petition."
[5] The exceptions, neither of which apply in this case, are found in sections 102.0035 and 102.004(a)(2) of the family code. See In re K.K.C., 292 S.W.3d 788, 790 n. 1 (Tex.App.-Beaumont 2009, no pet. h.) (citing to Texas Family Code sections 102.0035 and 102.004(a)). Under section 102.0035, a parent or expectant mother can confer standing to a prospective adoptive parent. See TEX. FAM.CODE ANN. § 102.0035. Under section 102.004(a)(2), a parent can also consent to a suit by a grandparent or relative of the child related within the third degree by consanguinity.
[6] Rather than ending on Sunday, Mikey's visits with his father ended Wednesday morning. Cf. TEX. FAM.CODE ANN. § 153.312.