**AFFIRMED; Opinion Filed October 7, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-11-01109-CV**

_____

**IN THE INTEREST OF I.I.G.T., A CHILD**

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-09-12092-R**

**OPINION**

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Myers

This appeal concerns the standing of a person not related to the child to bring a suit affecting the parent-child relationship (SAPCR). The trial court granted the child's mother's plea to the jurisdiction and dismissed Roderick Alexander's suit to establish conservatorship. In his sole issue on appeal, appellant contends the trial court erred by granting Mother's plea to the jurisdiction. We affirm the trial court's judgment.

**BACKGROUND**

The child was born October 23, 2001 in Louisiana. In March 2009, Mother completed an acknowledgment of paternity stating appellant was the child's biological father. Three months later, Mother filed a petition in Dallas to rescind the acknowledgment of paternity. Appellant filed a general denial and a counterpetition requesting he be appointed joint managing conservator with Mother and that the court order genetic testing to establish his status as the child's father. On September 1, 2009, genetic testing established that appellant was not the

child's father.  Mother asserted appellant lacked standing to bring his counterpetition and moved for dismissal of appellant's suit.  On November 18, 2009, the trial ordered "this case be dismissed for lack of evidence, due to test results showing that [appellant] is not the father of [the child]."  The court also ordered that appellant be omitted from the child's birth certificate and that appellant was denied custody and visitation.

On December 9, 2009, the court entered an amended judgment that found appellant was not the biological parent of the child but found he was "a psychological dad," and the court appointed Mother and appellant joint managing conservators.  Mother filed a motion for new trial, which was granted.

In April 2010, Mother filed another plea to the jurisdiction asserting appellant lacked standing to bring his suit for conservatorship, and on April 26, 2010, the trial court held a hearing on the plea to the jurisdiction.  On December 23, 2010, the trial court granted the plea to the jurisdiction,[1] dismissed appellant's counterpetition for conservatorship, and denied all his claims for relief.  Appellant filed a motion for new trial and a motion for reconsideration; following a hearing, the trial court denied the motions.

## STANDING

In his sole issue, appellant contends the trial court erred by sustaining Mother's plea to the jurisdiction and dismissing appellant's counterpetition seeking conservatorship for lack of standing.

A person seeking conservatorship of a child must have standing to bring suit.  *In re M.K.S.-V.*, 301 S.W.3d 460, 463 (Tex. App.—Dallas 2009, pet. denied).  Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a

---

[1] In this judgment, the trial court states, "While [Mother] may have allowed Mr. Alexander to form a relationship and bond with the child, this is not sufficient to support standing for him to sue [Mother] for custody of or visitation with the minor child."

lawsuit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *M.K.S.-V.*, 301 S.W.3d at 463. We review standing under the same standard we use for subject-matter jurisdiction generally: whether the pleader alleged facts that affirmatively demonstrated the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *M.K.S.-V.*, 301 S.W.3d at 463. When reviewing an order dismissing a cause for want of jurisdiction, appellate courts "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Huston v. Fed. Deposit Ins. Corp.*, 663 S.W.2d 126, 129 (Tex. App.—Eastland 1983, writ ref'd n.r.e.)). When a plea to the jurisdiction challenges the existence of jurisdictional facts and the evidence raises a fact question as to those facts, the fact issue must be resolved by the trier of fact. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

Standing in SAPCRs is governed by the family code, and a party bringing a SAPCR must plead and establish standing under the family code's provisions. *M.K.S.-V.*, 301 S.W.3d at 464. If the party fails to do so, the trial court must dismiss the suit. *Id.* A party's standing to pursue a cause of action is a question of law. *Id.* A court deciding a plea to the jurisdiction should consider evidence and review the substance of the legal claims only to the extent necessary to determine whether subject-matter jurisdiction over the case exists. *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.); *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When, as here, the trial court makes no separate findings of fact and conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *M.P.B.*, 257 S.W.3d at 808. We review the trial court's implied factual findings for legal and factual sufficiency, and we review the trial court's implied legal conclusions de novo. *Id.* Under both standards, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we will not disturb the court's

resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

In this case, appellant alleged standing to bring a SAPCR under section 102.003(a)(9),[2] which provides:

> (a) An original suit may be filed at any time by: . . .
>
>> (9) a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition . . . .

TEX. FAM. CODE ANN. § 102.003(a)(9) (West Supp. 2012). In computing the time under that provision, "the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id.* § 102.003(b). A "principal residence" is (1) a fixed place of abode; (2) occupied consistently over a substantial period of time; (3) that is permanent rather than temporary. *M.K.S.-V.*, 301 S.W.3d at 464; *M.P.B.*, 257 S.W.3d at 809.

Appellant filed his SAPCR on July 14, 2009. Appellant testified he had sole possession of the child for six months in 2005. Appellant testified he had possession of the child and "maintained care, custody, and control" of the child every weekend in 2009 pursuant to a "permanent arrangement" between him and Mother. He also picked up the child from daycare and school once or twice a week. He testified the child has her own bedroom at his house that she decorates herself. Appellant also testified he was at almost every medical and dental appointment of the child's. He stated he had attended all the school functions where the child

---

2 Appellant also alleged he had standing under sections 102.003(b), 102.005(5), and 153.312. Section 102.003(b) is not a basis for standing but provides instructions for computing time under other standing provisions, including section 102.003(a)(9); section 102.003(b) is discussed below. TEX. FAM. CODE ANN. § 102.003(b) (West Supp. 2012). Section 102.005(5) concerns standing in suits for adoption by an adult who has had substantial past contact with the child sufficient to warrant standing. *Id.* § 102.005(5). Section 153.312 does not concern standing but provides the requirements for the standard possession order when parents reside 100 miles or less apart. *Id.* § 153.312. Appellant does not assert on appeal that any of these provisions provide him standing to bring the SAPCR.

received trophies and awards. He said he did everything a father would do. He testified he was involved in disciplining the child and helped with her physical, emotional, and health requirements. He stated he contacted Mother about any problem with the child, but he said Mother did not always contact him with the child's problems. He also testified to financial support for the child, including paying for her daycare; buying her clothes, shoes, and school supplies; providing her with food at his house; getting her hair done; and "school projects and programs." He presented evidence that Mother listed him as the child's father on records with the child's school and the YMCA.

Mother testified the child never "lived with" appellant but would only "visit him." During some summer breaks, the child stayed with appellant's mother. Mother also testified that she and appellant discussed having the child live with appellant during the 2009 to 2010 school year, "but this was not an agreement that we had, no. That was a discussion." Mother agreed that appellant had a significant past relationship with the child. Mother testified she listed appellant as the child's father on the school and YMCA forms to simplify his being able to pick up the child if she was not able to pick her up. She testified that on weekends and holidays, appellant would ask if he could take the child. Mother testified that if she did not have any plans, then she would let appellant take the child. She testified they did not have a plan for his possession of the child; instead, she thought he was just a friend helping her out.

Appellant argues this case is analogous to three other cases, *In re M.K.S.-V*, 301 S.W.3d 460 (Tex. App.—Dallas 2009, no pet.), *Doncer v. Dickerson*, 81 S.W.3d 349 (Tex. App.—El Paso 2002, no pet.), and *In re M.P.B.*, 257 S.W.3d 804 (Tex. App.—Dallas 2008, no pet.). In *M.K.S.-V.*, two women living together decided to rear a child, and one of the women conceived through *in vitro* fertilization. *Id.* at 462. When the child was a year old, the women separated, but they entered into an agreement for the nonparent to have regular access to and possession of

the child. *Id.* They followed this schedule for two years. *Id.* However, when the mother refused to let the nonparent have further access to the child, the nonparent filed suit seeking to be appointed joint managing conservator. *Id.* The trial court dismissed the suit, concluding that the nonparent lacked standing. *Id.* at 463. We reversed and concluded the parties' agreement for possession of the child was similar to the standard possession order under the family code. *Id.* at 465; *see* TEX. FAM. CODE ANN. § 153.312 (West Supp. 2012) (standard possession order for parents residing within 100 miles of one another). We described how the child had her own bedroom at the nonparent's house; the regular visitation schedule; how the nonparent was listed as a parent on the school records, picked up the child from school, and attended school functions; how the two women, with the child, continued to attend church together as a family unit after they separated; and how the nonparent established a college fund for the child. *M.K.S.-V.*, 301 S.W.3d at 465. We stated,

> [T]he record does not suggest this pattern of possession and caregiving was intended to be a temporary arrangement. To the contrary, the possession agreement and the parties' actions evinced an intent that the child occupy [the nonparent's] home consistently over a substantial period of time.

*Id.* (citation omitted).

In *Doncer v. Dickerson*, 81 S.W.3d 349 (Tex. App.—El Paso 2002, no pet.), the child's parents were divorced, and the father married Doncer, who became the child's stepmother. *See Doncer*, 81 S.W.3d at 351–52. Pursuant to an agreed order, the mother and father shared possession of the child equally with the mother having the right to establish the child's primary residence. *Id.* at 351. Because the father and Doncer were married and lived together, the father's residence was also Doncer's residence. *See id.* at 361. After three years of equally shared custody and seventeen months under the agreed order, the father died and the mother terminated contact between Doncer and the child. *Id.* at 351–52. Doncer brought suit seeking possessory conservatorship, and the trial court dismissed Doncer's suit for lack of standing. The

–6–

trial court interpreted "principal residence" under section 102.003(b) to be the same as "primary residence" under section 153.134(b)(1). *Id.* at 352 n.1; *compare* FAM. § 102.003(b) (requiring the court to consider the child's "principal residence" in calculating the time of actual care control and possession of the child under section 102.003(a)(9)); *with* FAM. § 153.134(b)(1) (West 2008) (requiring trial court to designate the conservator with the exclusive right to determine the child's "primary residence"). The trial court concluded that Doncer had not established actual, care, control, and possession of the child for six months. *Doncer*, 81 S.W.3d at 352. The court of appeals reversed, stating:

> By virtue of the joint managing conservatorship agreement, [the mother] and [the father] intended [the child] to occupy the Doncer home *consistently*, over a *substantial* period of time, at least until he attained majority. It was not intended to be a temporary arrangement to facilitate momentary housing difficulties, inconvenient travel schedules, the pursuit of higher education, or the inability to provide child care.

*Id.* at 362.

In this case, because the trial court found appellant lacked standing and the court did not make findings of fact and conclusions of law, we must draw every reasonable inference supported by the record in support of the trial court's judgment. *M.P.B.*, 257 S.W.3d at 808. Although aspects of *M.K.S.-V.* and *Doncer* are similar to the case before us, those cases are distinguishable because the parties in *M.K.S.-V.* had a contractual possession schedule similar to the standard possession order and the parties in *Doncer* had an agreed possession order. In this case, there was no court order for appellant's possession of the child before he filed suit, and the evidence conflicts on whether appellant and Mother had an agreement for appellant's regular possession of the child. Under the applicable standard of review, we must conclude the trial court impliedly found there was no such agreement. *See City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery*, 116 S.W.3d at 761; *M.P.B.*, 257 S.W.3d at 808. Mother's testimony shows each period of appellant's possession of the child was a temporary arrangement with no

obligation on Mother to consent to that period of possession or any future possession. *M.K.S.-V.* and *Doncer* do not support appellant's position.

In *In re M.P.B.*, the mother lived in Texas and was appointed primary joint managing conservator of the infant child. *In re M.P.B.*, 257 S.W.3d 804, 807 (Tex. App.—Dallas 2008, no pet.). The father moved to California and had limited contact with the child thereafter. *Id.* The mother moved in with her mother (the grandmother) for three months and then moved to an apartment near the grandmother's home. *Id.* The grandmother cared for the child at the grandmother's home every weekend of the child's life, and the child spent more time overall at the grandmother's home than at the mother's apartment. *Id.* at 809. When the mother was killed when the child was twenty months old, the grandmother brought suit seeking conservatorship. *Id.* at 807. The father asserted the grandmother lacked standing. The trial court concluded the grandmother had standing and appointed her as the primary joint managing conservator with the exclusive right to designate the child's primary residence. *Id.* at 808. The trial court did not enter findings of fact and conclusions of law. *Id.* On appeal, we had to draw every reasonable inference supported by the record in favor of the trial court's determination that the grandmother had standing. *Id.* Applying that standard of review, we concluded the evidence showed the grandmother's home was the child's principal residence for at least six months. *Id.* at 809. We stated,

> Although Grandmother's actual care, control, and possession of [the child] was not exclusive, with Mother's consent, Grandmother provided [the child] with a fixed place of abode, occupied consistently over a substantial period of time, that was permanent rather than temporary. The record does not suggest this pattern of possession and caregiving was intended to be a temporary arrangement to facilitate momentary housing difficulties, inconvenient travel schedules, the pursuit of higher education, or the inability to provide child care. Thus, we conclude that under the specific facts of this case, the evidence is sufficient to support the trial court's threshold determination that Grandmother had standing to file an original suit requesting managing conservatorship.

*Id.*

*In re M.P.B.* is distinguishable from this case because the evidence in that case showed the grandmother provided a permanent residence for the child. The evidence did not suggest the child's staying with the grandmother was intended to be temporary. *Id.* In this case, however, Mother's testimony shows the child's residing with appellant was not intended to be a permanent arrangement. We conclude *M.P.B.* does not support Mother's argument.

Drawing every reasonable inference supported by the record in favor of the trial court's judgment, we conclude the record does not show that, for the six months of appellant's possession of the child ending within 90 days of suit being filed, the parties intended for the child to occupy appellant's home consistently over a substantial period of time and intended that appellant's home be a permanent rather than temporary abode for the child. *Cf. M.K.S.-V.*, 301 S.W.3d at 465 (evidence showed parties intended for the child to occupy nonparent's home over a substantial period of time). Instead, Mother's testimony shows the periods of the child's residing with appellant for the various weekends, holidays, and summer breaks were each intended to be a temporary arrangement.

We conclude the trial court did not err by sustaining Mother's plea to the jurisdiction and

dismissing appellant's suit for conservatorship. We overrule appellant's sole issue.[3]

## CONCLUSION

We affirm the trial court's judgment.


/Lana Myers/
LANA MYERS
JUSTICE

111109F.P05

---

[3] Appellant also argues the trial court erred by requiring appellant to show that appointing Mother sole managing conservator or both parties as joint managing conservators would significantly impair the child's health or emotional development. Because we have concluded appellant failed to establish standing under section 102.003, resolution of this argument is not necessary for disposition of the appeal. Accordingly, we do not address it. *See* TEX. R. APP. P. 47.2.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF I.I.G.T., A CHILD

No. 05-11-01109-CV

On Appeal from the 254th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-09-12092-R.
Opinion delivered by Justice Myers.
Justices FitzGerald and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Sueyuan O. Talton recover her costs of this appeal from
appellant Roderick Alexander.

Judgment entered this 7th day of October, 2013.

/Lana Myers/
LANA MYERS
JUSTICE