

# NUMBER 13-20-00094-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE NANCY GRACIELA CISNEROS

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Hinojosa[1]

Relator Nancy Graciela Cisneros filed a petition for writ of mandamus in the above cause on February 13, 2020. Through this original proceeding, Nancy contends that the trial court erred in concluding that she lacks standing to seek conservatorship of minor child, S.D.E.[2] We conditionally grant the petition for writ of mandamus.

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When granting relief, the court must hand down an opinion as in any other case," but when "denying relief, the court may hand down an opinion but is not required to do so."); *see also id. R.* 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number F-0188-20-4 in the County Court at Law No. 4 of Hidalgo County, Texas, and the respondent is the Honorable Federico "Fred" Garza Jr. *See* TEX. R. APP. P. 52.2.

## I. BACKGROUND

The underlying matter arises from a divorce proceeding between Sherie Esparza and Nancy Graciela Cisneros. S.D.E. was born on October 6, 2003 and is Sherie's biological daughter and Nancy's stepdaughter.

On January 13, 2020, Sherie filed an "Original Petition for Divorce and Temporary Restraining Order." The petition alleged that Sherie and Nancy were married on or about June 16, 2018 and ceased to live together as spouses on or about January 5, 2020. The petition stated that the McAllen Municipal Court had entered a protective order, expiring on or about March 6, 2020, removing S.D.E. from Sherie and giving custody to Nancy, "a non-parent and a non-blood relative," without evidence or a hearing. The petition alleged, inter alia, that Nancy had denied Sherie and Sherie's mother, Barbara Esparza, access to S.D.E., that Nancy was originally from Mexico and "it is feared that she will kidnap the minor child to Mexico," that Nancy had committed various actions such as removing Sherie's access to S.D.E. at her high school, taking her to a doctor "without her mother's consent," and cutting off all access to S.D.E. from Sherie's side of the family. Sherie alleged that Nancy lacked standing to have custody of S.D.E., and she sought a temporary restraining order to return S.D.E. to her custody and possession, or alternatively, that custody and possession of S.D.E. be given to biological grandmother Barbara. Without providing details, Sherie alleged that S.D.E. was in "imminent danger" because of Nancy's custody and possession. The petition was supported by a copy of the "Magistrate's Order of Emergency Protection" issued by the McAllen Municipal Court, which identified Sherie as the "Defendant," stated that she was arrested for an offense involving family violence or another specified penal code offense, and provided an order

2

of emergency protection for Nancy and S.D.E. for a duration of sixty-one days. The petition was also accompanied by Sherie's affidavit supporting some of the factual allegations in the petition.

On January 13, 2020, the trial court entered a "Temporary Restraining Order" in Sherie's favor and set a hearing for January 27, 2020 to determine whether the temporary restraining order should be made a temporary injunction pending final hearing. This order denied Nancy possession of S.D.E.

On January 24, 2020, Nancy filed an "Original Counter-Petition[] for Divorce and in Suit Affecting the Parent Child Relationship." Nancy alleged that she was S.D.E.'s stepmother, that she had standing to bring the suit, and that she "had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." She alleged that it was in S.D.E.'s best interest that she be appointed her sole managing conservator and that Sherie had "engaged in a history or pattern" of family violence and child abuse. Nancy argued that awarding Sherie access to S.D.E. would endanger S.D.E.'s physical health and emotional welfare.

On January 27, 2020, the trial court held an evidentiary hearing on Sherie's request for injunctive relief. According to the record of that hearing, counsel for the parties engaged in rancorous and angry argument with frequent and bitter interruptions and repeated instances where counsel accused each other and their respective clients of "blatant" lying and asserting facts that constituted, e.g., "a total lie straight from the pit of hell."

3

At the hearing, counsel for Sherie represented that S.D.E. had been residing with Barbara, her biological grandmother, for the past fourteen days at the family's home. Sherie's counsel argued that Nancy was a Mexican citizen and that there was a "great concern" that she would "abduct the child" and take her to Mexico because she was in possession of the child's birth certificate. Sherie requested that there be "no contact" between Nancy and S.D.E. because "[t]hey're not blood-related; she's a non-parent." Counsel asserted that Nancy's standing was a constitutional issue and argued that it was "against public policy to take a child away from their mother just because [Nancy] wants to." Sherie's counsel argued that Nancy was attempting to "get-even" with Sherie "because [Nancy] has threatened [Sherie] many, many times" that Sherie should not leave Nancy "because if you leave me I'm going to take your child and I'm going to leave you in the street." Counsel argued that Nancy "has no standing or protected interest that allows her to interfere with [Sherie's] constitutional right to raise the child as she sees fit."

Nancy's counsel, in contrast, asserted that there was "no danger" of Nancy abducting S.D.E. because Nancy was a legal permanent resident of the United States who had resided in this country for years. She alleged that Sherie had "strangled" both Nancy and S.D.E. in the domestic violence event that prompted the municipal court protective order, which had occurred on January 5, 2020, and that there was an "extensive history of domestic violence in this relationship, also involving the child." Nancy's counsel argued that S.D.E. did not have a good relationship with Barbara and that a Child Protective Services worker, who was present to provide testimony, was of the opinion that S.D.E. did not feel comfortable living with Barbara because Barbara was present during domestic violence involving S.D.E. but failed to protect her.

4

During the hearing, the trial court expressly queried whether the parties were ready to argue standing, and they proceeded to address the issue. The parties and trial court discussed the application and requirements of § 102.003(9) of the Texas Family Code, which governs nonparent standing. *See* TEX. FAM. CODE ANN. § 102.003(a)(9) (requiring a nonparent to have actual care, control, and possession of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition). The trial court stated that the statute "gives everybody—anybody standing." The trial court appeared to be concerned that S.D.E. was born before Sherie and Nancy married, that a "maid" or "nanny" could meet the requirements under the statute, and that the statute presumes that "there's no biological parent around." The trial court expressly noted that Sherie, the parent, is "available" and has not "relinquished" or "abandoned" S.D.E.

Although the parties had numerous witnesses prepared to testify, ultimately, the only witness to testify at the hearing was Nancy. Nancy testified that at the time of the hearing, S.D.E. was in the tenth grade and studied math, biology, history, and English, and took pre-AP classes. Nancy testified that S.D.E.'s grades were good, and she participated in both swimming and soccer extracurricular activities.

According to Nancy, she first met Sherie in 2006 and they began dating at the end of 2010. Nancy met S.D.E. immediately and stated that she saw her "[j]ust about all the time." Nancy and Sherie moved in together after three months of dating, and S.D.E. lived with them from that date until January 2020, when the domestic violence issue occurred. There were no other members of their household. Nancy testified that when they first started living together, she taught S.D.E. the alphabet and how to read. Nancy also took S.D.E. to school, helped her with her homework, made her lunch, took her to the doctor

5

and dentist, and attended school activities with her. She specified that she had been taking S.D.E. to school for eleven years and had been helping her with her homework for "[a]ll the years that I've been with her; 11 years." She made S.D.E. lunch "the majority of the time." Nancy testified that she was the only one who took S.D.E. to the doctor when she needed to go. Nancy attended S.D.E.'s school activities "[a]ll the time that she needs." Nancy stated that she was "in charge" of her family. She denied that (1) Sherie was the only one who disciplined S.D.E., (2) Sherie did not allow her to discipline S.D.E., and (3) Sherie did not let her discipline S.D.E. "because [she is] so mean to the child."

Nancy testified that S.D.E. called her "Mommy" and called Sherie "Mom." Nancy testified that when S.D.E. had a problem, she approached her to discuss it the "majority" of the time, as opposed to approaching Sherie.Nancy described S.D.E.'s relationship with Sherie as "good," and asserted that they were "really close," but stated that Sherie and S.D.E. did not spend "a lot" of time together because S.D.E. is "always with me all the time." Nancy said if they were going to cook or clean, "it's always with me." Nancy testified that she was "close" with S.D.E. at the present time, but that she was unable to attend her school events because she was prohibited by the trial court's restriction. She had previously attended S.D.E.'s soccer and swimming events.

Although the record contains some testimony and allegations regarding alleged malfeasance by the parties, the trial court refused to allow additional testimony regarding domestic violence or to admit a videotape of the alleged incident that had occurred in January. After Nancy testified, the trial court stated that "I'm ready to rule that she has no standing" and stated that she lacked standing. The trial court rejected Nancy's argument that she possessed standing under § 102.003(a)(9) because she had actual care,

6

custody, and control of S.D.E. for the past ten years, by reiterating "No" five separate times. The trial court repeatedly stated: "I think there's no standing;" "I don't think she has standing;" "I don't think there's standing"; and "I don't think she has standing." The trial court ultimately instructed counsel for Sherie to "[g]ive me an order for me to sign or something so they can go and appeal or whatever," because "she's got no standing." After counsel agreed to provide the court with an order, the trial court again reiterated that "I don't think she's got standing right now." Counsel for Nancy requested that the trial court allow her to finish presenting her evidence, and the trial court denied that request on grounds that he had "heard enough evidence already." Finally, the trial court again asserted "[t]here's no standing."

On January 29, 2020, the trial court signed temporary orders, which appointed Barbara as temporary managing conservator for S.D.E. with the exclusive use and possession of Sherie and Nancy's residence, and ordered that S.D.E. reside at the residence with Barbara. The court's order expressly "prohibited" Nancy from the residence and also provided that neither Sherie nor Nancy could have "visitation with the child for the interim." The order stated that "[a]fter the criminal proceeding involving the alleged assault between the parties has been resolved, and after the investigation by Child Protection Service is fully completed, then this Court will reconsider this order on appropriate motion."

On January 30, 2020, Nancy filed a "Motion to Reconsider Ruling on Standing." Nancy's motion summarized some of the testimony adduced at the hearing and argued that she had standing "because she had actual care, control, and possession of S.D.E.

for at least six months ending not more than 90 days before this suit was filed." The trial court subsequently set the case for final hearing to be held on April 6, 2020.

This original proceeding ensued. By one issue, Nancy asserts that the trial court abused its discretion in finding that she did not have standing to seek conservatorship of S.D.E. when she resided with S.D.E. for approximately a decade, provided for her needs, and exercised authority similar to that of a parent. The Court requested that Sherie, or any others whose interest would be directly affected by the relief sought, file a response to the petition for writ of mandamus. *See* TEX. R. APP. P. 52.2, 52.4, 52.8. Sherie and Barbara filed a joint response to the petition, Nancy filed a reply thereto, and Sherie and Barbara filed an additional response.

## II.    MANDAMUS

Mandamus is an "extraordinary" remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding); *see In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). In order to obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding).

Sherie and Barbara argue that mandamus is not designed to review "every ruling" and the trial court's ruling here is not susceptible to review by such an original proceeding. However, mandamus is the appropriate mechanism to challenge temporary orders made while a suit is pending because such orders are interlocutory and not appealable. *In re Derzapf*, 219 S.W.3d 327, 334 (Tex. 2007) (orig. proceeding) (per curiam). Mandamus is

8

also available to review certain rulings pertaining to standing in a suit affecting the parent-child relationship. *See*, *e.g.*, *In re Martin*, 523 S.W.3d 165, 169 (Tex. App.—Dallas 2017, orig. proceeding); *In re McDaniel*, 408 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding); *In re Shifflet*, 462 S.W.3d 528, 541–42 (Tex. App—Houston [1st Dist.] 2015, orig. proceeding).

We conclude that Nancy would lack an adequate remedy by appeal, and accordingly, mandamus review is therefore appropriate. *See In re Derzapf*, 219 S.W.3d at 335; *In re Martin*, 523 S.W.3d at 169; *In re McDaniel*, 408 S.W.3d at 396; *In re Shifflet*, 462 S.W.3d at 541–42.

### III.    ORAL RULING

Before addressing the merits of this original proceeding, we note that we do not have a written order signed by the trial court containing the challenged ruling regarding Nancy's standing. Sherie and Barbara further argue that the trial court's orders are "insufficiently clear" to support mandamus.

Mandamus may be based on an oral ruling. *See In re Nabors*, 276 S.W.3d 190, 192 n.3 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding); *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding); *In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding). However, the ruling must be clear, specific, enforceable, and adequately shown by the record. *In re State ex rel. Munk*, 448 S.W.3d 687, 690 (Tex. App.—Eastland 2014, orig. proceeding); *In re Bledsoe*, 41 S.W.3d at 811; *see also* TEX. R. APP. P. 52.3(k)(1)(A) ("The appendix must contain . . . a certified or sworn copy of any order complained of, or any other document showing the matter complained of.").

9

Here, we have been provided with the record of the hearing containing the trial court's ruling on Nancy's standing. *See In re Bill Heard Chevrolet, Ltd*., 209 S.W.3d at 316 (stating that the mandamus record must include either the trial court's written order or a "reporter's record reflecting an oral ruling in open court"). After reviewing the reporter's record, we conclude that the trial court's oral ruling is clear, specific, and enforceable and is adequately shown by the record. The trial court unequivocally and clearly repeatedly ruled that Nancy lacked standing. We reject Sherie and Barbara's arguments otherwise. We proceed with our review of the merits.

## IV. STANDING

Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintain suit. *See In re H.S*., 550 S.W.3d 151, 155 (Tex. 2018); *In re M.K.S.-V.*, 301 S.W.3d 460, 463 (Tex. App.—Dallas 2009, pet. denied) (op. on reh'g). "Generally, standing involves a threshold determination of whether a plaintiff has a sufficient 'justiciable interest' in the suit's outcome to be entitled to a judicial determination." *In re H.S*., 550 S.W.3d at 155; *see In re A.D.T*., 588 S.W.3d 312, 316 (Tex. App.—Amarillo 2019, no pet.); *In re SSJ-J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.). In assessing standing, the merits of the underlying claims are not at issue. *See In re H.S*., 550 S.W.3d at 155 ("Here, the merits of Grandparents' claims— that is, whether they should be appointed Heather's managing conservators with the right to designate her primary residence—have not yet been considered by any court and are not before us."); *In re Smith*, 260 S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (explaining, in a suit involving grandparent access, that "whether the grandparent

10

ultimately will succeed is a different question than whether the grandparent has the right simply to bring suit").

The party asserting standing bears the burden of proving that issue. *In re A.D.T.*, 588 S.W.3d at 316; *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd). In assessing standing, a reviewing court should look to the pleadings but may consider relevant evidence of jurisdictional facts when necessary to resolve the jurisdictional issues raised. *In re H.S.*, 550 S.W.3d at 155; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *In re A.D.T.*, 588 S.W.3d at 316. Standing is a question of law that the court reviews de novo. *In re H.S.*, 550 S.W.3d at 155; *In re A.D.T.*, 588 S.W.3d at 316; *Mauldin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.—Houston [1st Dist.] 2014, no pet.). If a party does not have standing, the court is deprived of subject matter jurisdiction over the case, and the merits of the plaintiff's claims cannot be litigated or decided. *In re H.S.*, 550 S.W.3d at 155; *Rolle v. Hardy*, 527 S.W.3d 405, 415 (Tex. App.—Houston [1st Dist.] 2017, no pet.). However, if the evidence creates a question of fact on standing, then the matter will be resolved by the fact finder. *In re Shifflet*, 462 S.W.3d 528, 538 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding); *In re M.J.G.*, 248 S.W.3d 753, 758 (Tex. App.—Fort Worth 2008, no pet.).

Standing in a SAPCR is governed by the family code. *See In re E.G.L.*, 378 S.W.3d 542, 547 (Tex. App.—Dallas 2012, pet. denied). A party seeking relief in a SAPCR must allege and establish standing within the parameters of the language used in the relevant statute. *See In re Tinker*, 549 S.W.3d 747, 751 (Tex. App.—Waco 2017, orig. proceeding [mand. denied]). "Because standing to bring a SAPCR is governed by statute, we apply statutory-interpretation principles in determining whether a plaintiff falls within the

11

category of persons upon whom such standing has been conferred." *In re H.S.*, 550 S.W.3d at 155.

Here, Nancy asserts that she has standing to seek conservatorship of S.D.E. pursuant to § 102.003(a)(9) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 102.003(a)(9). Section 102.003, entitled "General Standing to File Suit," provides that an original suit may be filed at any time by "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *Id.* § 102.003(a)(9). In computing the time necessary for standing under this section, the "court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id.* § 102.003(b). This language excludes nonparents who do not share a principal residence with a child for the statutory time period from establishing standing under § 102.003(a)(9), "regardless of how extensively they participate in caring for her." *In re H.S.*, 550 S.W.3d at 156. A nonparent has standing under § 102.003(a)(9)'s language requiring "actual care, control, and possession of the child" if, for the requisite six-month time period, the nonparent served in a parent-like role by (1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children. *Id.* at 160. Section 102.003(a)(9) does not require the nonparent to possess "ultimate" legal authority over the child or "exclusive" care and control over the child or require that the nonparent's provision of care to the child was intended to have been permanent in nature. *Id.* at 157–60. Similarly, the statute does not

12

premise standing on whether the parents of the child "have wholly ceded or relinquished their own parental rights and responsibilities." *Id.* at 160.

## V. APPLICATION

We examine the pleadings and relevant evidence of jurisdictional facts to determine Nancy's standing. *See In re H.S.*, 550 S.W.3d at 155; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *In re A.D.T.*, 588 S.W.3d at 316. Section 102.003 provides standing to a nonparent "who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9). In her pleadings, Nancy asserted that she "had actual care, control, and possession of [S.D.E.] for at least six months ending not more than 90 days preceding the date of the filing of the petition." At the hearing, Nancy testified to similar facts. *Id.* § 102.003(b). The pleadings and evidence thus support the statute's temporal requirements. *See id.*

As directed by the Texas Supreme Court, Nancy has standing under § 102.003(a)(9)'s language requiring "actual care, control, and possession of the child" if she served in a parent-like role by (1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children. *See In re H.S.*, 550 S.W.3d at 160. Nancy was S.D.E.'s stepmother, and based on the evidence, their shared home was the principal residence of the child. Again, based on the evidence, Nancy engaged with S.D.E. on a daily basis and directly assisted with her education, supported her sports activities, and provided any necessary medical needs for at least a decade. The record demonstrates

13

that Nancy exercised guidance, governance, and direction similar to that of a parent, as typically exercised on a day-to-day basis. *See id.* at 160. There is no contrary evidence in the record. And, contrary to the arguments at issue in the trial court, the statute does not require an attempted adoption of S.D.E. or that Sherie be deceased or unavailable. *See id*. at 157–60.

Based on the foregoing, we conclude that Nancy possessed standing under the family code. *See* TEX. FAM. CODE ANN. § 102.003(a)(9); *In re H.S.*, 550 S.W.3d at 160. We proceed to address Sherie and Barbara's remaining arguments contending otherwise.

## A. Constitutionality

Sherie and Barbara assert that mandamus should be denied because Nancy did not challenge all of the grounds for the trial court's ruling. In support of this argument, they specifically assert that Nancy never explained why § 102.003 of the Texas Family Code was constitutional. We are not persuaded by this argument.

First, Sherie and Barbara's arguments misstate the burden of proof. As the parties making the constitutional challenge, they bore the burden of proof to establish that § 102.003 was unconstitutional. *See Lund v. Giauque*, 416 S.W.3d 122, 126 (Tex. App.—Fort Worth 2013, no pet.). Second, Sherie and Barbara's conclusory and vague allegations regarding constitutionality, made during argument at the hearing, without briefing or analysis, did not suffice to properly present this issue. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *In re J.C.*, No. 02-18-00029-CV, 2019 WL 4019682, at *5, __ S.W.3d __, __ (Tex. App.—Fort Worth Aug. 27, 2019, no pet.) ("[E]rror-preservation rules apply to constitutional challenges.");

14

*see also Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823, 828–29 (Tex. App.—Tyler 2012, no pet.). Third, if in fact the trial court based its ruling on the alleged unconstitutionality of the statute, which assumption is not supported by the record, the Texas Supreme Court has expressly considered the constitutionality of § 102.003 and has specifically held that "properly construed," the statute "does not unconstitutionally interfere with parents' fundamental liberty interest in raising their children." *In re H.S.*, 550 S.W.3d at 163.

## B.   Unclean Hands

Sherie and Barbara further assert that mandamus relief should be denied because Nancy lacks clean hands. Though mandamus may be a legal remedy, the equitable doctrine of unclean hands plays a role in its availability. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 552 n.2 (Tex. 1990) (orig. proceeding) (stating that "[m]andamus is a legal remedy, but it is governed to some extent by suitable principles" and "the doctrine of unclean hands has been used to deny issuance of the writ."); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (stating the same). The doctrine normally applies to situations where one's own conduct in connection with the matter in dispute has been unconscientious, unjust or a want of good faith and such conduct exposed the complaining party to injury. *Id.*; *Thomas v. McNair*, 882 S.W.2d 870, 880–81 (Tex. App.—Corpus Christi–Edinburg 1994, no writ). A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained-of cannot be corrected without applying the doctrine. *LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 149 (Tex. App.—Waco 2010, no pet.); *In re Jim Walter Homes*, 207 S.W.3d at 899–900; *Thomas*, 882 S.W.2d at 880–81; *see also In re Counsel Fin. Servs., L.L.C.*, No. 13-12-00151-CV, 2013 WL 3895317, at *10 (Tex.

App.—Corpus Christi–Edinburg July 25, 2013, orig. proceeding) (mem. op.). The application of the clean hands doctrine is committed to the court's discretion. *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 899–900; *Thomas*, 882 S.W.2d at 880–81.

Sherie and Barbara assert that Nancy has unclean hands because she, inter alia, filed a false affidavit of indigency, she lied multiple times about the incident pertaining to domestic violence, and she is attempting to take S.D.E. and material possessions away from Sherie. Sherie and Barbara support these allegations against Nancy with a March 2, 2020 affidavit prepared by Sherie and other assorted documentation of dubious relevance, none of which was presented to the trial court.[3]

As an initial matter, the issues pertaining to malfeasance between Sherie and Nancy are hotly disputed in this lawsuit and the allegations made by Sherie and Barbara are contradicted, in part, by Nancy's testimony. Moreover, these issues are not pertinent to our analysis regarding standing. *See* TEX. FAM. CODE ANN. § 102.003(a)(9); *In re H.S.*, 550 S.W.3d at 160. However, even if the record fully supported Sherie and Barbara's allegations, which it does not, they cite no authority, and we have found none, for their contention that such facts warrant denial of the petition for writ of mandamus in this case. *See In re Empire Pipeline Corp.*, 323 S.W.3d 308, 315 (Tex. App.—Dallas 2010, orig. proceeding); *see also In re Jim Walter Homes*, 207 S.W.3d at 899 (stating that the unclean hands doctrine should not be applied when the complaining party has not been seriously harmed and the wrong complained-of can be corrected without applying the

---

[3] With limited exceptions, an appellate court reviews the actions of the trial court based on the record before the court at the time it makes its ruling. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex. 1990) (orig. proceeding); *Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding); *Hudson v. Aceves*, 516 S.W.3d 529, 539–40 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (combined app. & orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). For the purpose of this proceeding only, we assume such materials may be considered in a clean hands analysis.

doctrine); *In re Shaw*, No. 05–07–01040–CV, 2007 WL 2447275, at *2 n.3 (Tex. App.—Dallas Aug. 30, 2007, orig. proceeding) (mem. op.) (same). We are not persuaded by Sherie and Barbara's argument as to "unclean hands."

## C. "Third Party Custody"

Next, Sherie and Barbara assert that Nancy lacks a "biological or legal" relationship with S.D.E. and was thus required to demonstrate either that Sherie relinquished care, control, and possession of S.D.E. to Nancy or that appointment of Sherie as conservator would significantly impair S.D.E.'s physical health or emotional development. *See* TEX. FAM. CODE ANN. §§ 153.131, 153.373. Neither of these issues, however, are pertinent to a standing analysis under § 102.003(a)(9). *See id.* § 102.003; *In re H.S.*, 550 S.W.3d at 156. Sherie and Barbara's arguments instead concern the merits of Nancy's claims regarding possession and custody and are not before us in this proceeding, where we are merely determining whether Nancy has the right simply to bring suit. *See In re H.S.*, 550 S.W.3d at 156; *In re Smith*, 260 S.W.3d at 573. Accordingly, we reject this argument.

## D. Credibility

In their sur-reply, Sherie and Barbara assert that the trial court was free to disregard Nancy's testimony. They assert that the trial court can choose to believe a witness or not, and that the trial court was the sole judge of her credibility. However, although a trial court is generally free to disbelieve testimony, in the absence of competent evidence to the contrary, it is not authorized to find that the opposite of the testimony is true. *In re F.E.N.*, 542 S.W.3d 752, 764–65 (Tex. App.—Houston [14th Dist.] 2018), *review denied sub nom. Interest of F.E.N.*, 579 S.W.3d 74 (Tex. 2019); *Schwartz v.*

*Pinnacle Comms.*, 944 S.W.2d 427, 434 n.5 (Tex. App.—Houston [14th Dist.] 1997, no writ). As explained by the Fourteenth Court of Appeals:

> As a general rule, the testimony of any witness does no more than raise a fact issue to be determined by the fact finder. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990). Nevertheless, while the fact finder is charged with the duty of deciding issues raised by conflicting evidence, when the evidence is not conflicting, the fact finder may not disregard uncontradicted testimony in order to decide an issue in accordance with its own wishes. *Tex. & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522, 530 (1947); *Berry v. Griffin*, 531 S.W.2d 394, 396 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd. n.r.e.). This exception applies even when the testimony comes from an interested witness if certain circumstances exist to ensure its reliability. If the interested witness' testimony is clear, direct, and positive, as well as free from contradiction, inaccuracies, and suspicious circumstances, it is taken as true, as a matter of law. *Ragsdale*, 801 S.W.2d at 882; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *Cochran v. Wool Growers Cent. Storage*, 140 Tex. 184, 166 S.W.2d 904, 908 (1942). This exception applies with special force when the interested witness' testimony was capable of being readily controverted if untrue, yet was left uncontroverted. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989). Thus, when the opposing party has the means and opportunity of disproving the testimony or testing the credibility of the witness, but fails to avail himself of either opportunity, his argument on appeal loses its primary thrust. *Collora v. Navarro*, 574 S.W.2d 65, 69–70 (Tex. 1978).

*Schwartz*, 944 S.W.2d at 434 (internal footnotes omitted); *see Hartis v. Century Furniture Indus., Inc.*, 230 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Here, Nancy was the only witness who provided testimony relevant to standing. Although counsel for Sherie and Barbara aggressively cross-examined Nancy, her testimony was clear, direct, and positive. Her testimony could have been readily controverted by testimony from other witnesses but was not. Under these circumstances, the trial court was not authorized to disregard Nancy's testimony. *See Schwartz*, 944 S.W.2d at 434. Accordingly, we reject Sherie and Barbara's argument to the contrary.

**E. Summary**

Based on the pleadings and evidence, Nancy has standing to seek conservatorship of S.D.E. Thus, we reject Sherie and Barbara's arguments against granting mandamus relief in favor of Nancy.

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the sur-reply, is of the opinion that Nancy has met her burden to obtain mandamus relief. Contrary to the trial court's ruling, Nancy possesses standing to bring suit. Accordingly, we conditionally grant mandamus relief and direct the trial court to withdraw its rulings otherwise and proceed in accordance with this memorandum opinion. Our writ will issue only if the trial court fails to comply.

LETICIA HINOJOSA
Justice

Delivered and filed the
7th day of April, 2020.