**Paul James HUDSON, Appellant,**

**v.**

**Gloria Araceli Loeza ACEVES, Appellee.**

**NUMBER 13–14–00400–CV**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Delivered and filed December 1, 2016

Hon. Brandy Wingate Voss, Law Offices of Brandy Wingate Voss, PLLC, McAllen, TX, for Appellant(s).

Hon. Katie P. Klein, Hon. William D. Mount Jr., Dale & Klein, L.L.P., McAllen, TX, for Appellee(s).

Before Justices Garza, Perkes and Longoria

## OPINION

Opinion by Justice Garza

Paul James Hudson filed an interlocutory appeal challenging the trial court's temporary order enjoining him from initiating or pursuing legal proceedings in Mexico against Gloria Araceli Loeza Aceves. Hudson asks us to construe the appellate brief as a petition for writ of mandamus in the event that we conclude we lack jurisdiction over the interlocutory appeal.

We lack jurisdiction over the interlocutory appeal, but we find that the trial court abused its discretion, leaving Hudson without an adequate appellate remedy. Accordingly, we will conditionally grant mandamus relief.

## I. BACKGROUND

Aceves filed for divorce from Hudson, her third husband, in 2010. Her petition sought, among other things, just and right division of the community property and sole managing conservatorship of the parties' triplet sons, born in 2005. In 2011, the trial court rendered temporary orders providing, among other things, that: (1) Hudson would pay Aceves $5,000 in monthly child support and $20,000 in monthly spousal support; (2) Aceves would have exclusive possession of a home in Quintana Roo, Mexico; and (3) Hudson was authorized to "make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit."

In September of 2013, Hudson filed a motion to dismiss the divorce proceeding on grounds of (1) Texas Rule of Civil Procedure 39(b), regarding joinder of parties needed for just adjudication; (2) forum non conveniens; and (3) the doctrine of comity. The motion argued that Aceves's discovery responses have revealed that the parties were not actually married, and that

"the validity of the marriage and the resulting consequences of such a decision require the joinder of indispensable third parties that cannot be joined in this proceeding." Hudson asserted in particular that Aceves's second husband, Michael Coleman, had filed suit in Mexico to invalidate Coleman's divorce from Aceves and that one potential outcome of Coleman's suit would be to reinstate the marriage between Coleman and Aceves, thereby nullifying Aceves's marriage to Hudson.

The motion to dismiss further argued that Aceves's daughter Myrna "claims title" to the Quintana Roo property and that, because Aceves "refus[es] to require [Myrna] to participate in this proceeding, this Court cannot acquire personal jurisdiction over her, and is therefore unable to fully adjudicate title to that property." The motion to dismiss also noted that "nearly all of the parties' real property is located in Mexico" and argued that the court would be "unable to render an enforceable order transferring property located in Mexico." The trial court denied Hudson's motion to dismiss and set a trial date of March 31, 2014.

On February 26, 2014, Aceves filed a motion for interim attorney's fees and expert fees, asserting that she will have incurred $390,000 in such fees prior to trial and that Hudson "for all practical purposes, totally control[s]" the parties' assets. The motion argued that Hudson "expanded this litigation by asserting that the parties are not married due to one or more prior unresolved marriages of [Aceves]" and that Aceves has incurred additional attorney's fees as a result. On March 13, 2014, Aceves filed a motion to reinstate Hudson's $20,000 monthly spousal support obligation, which had previously been reduced to zero. At a hearing on March 31 and April 2, 2014, the trial court orally denied Aceves's request for reinstatement

of spousal support, and it reset trial for July 14, 2014. It did not rule on the request for interim fees.

On April 17, 2014, Aceves filed an "Emergency Motion for Further Temporary Orders" alleging that Hudson "has used a substantial portion of community funds in Mexico to file actions to deprive [Aceves] of the exclusive and private use" of the Quintana Roo home and that Hudson "has falsified writings in Mexico relating to the property located in Quintana Roo to deprive [Aceves] of the exclusive and private use of the property." The motion requested modified temporary orders prohibiting Hudson from "undertaking such actions and/or using community funds for filing and prosecuting of actions in Mexico with the sole purpose of depriving [Aceves] of the exclusive and private use" of the Quintana Roo property. The motion further stated:

> Additionally, [Hudson] has used a substantial portion of community funds in Mexico to file other miscellaneous actions to harm [Aceves]. [Aceves] requests that the Temporary Orders be modified to prohibit [Hudson] from undertaking such actions and/or using community funds for filing and prosecuting actions in Mexico aimed at harming [Aceves].

Subsequently, on May 13, 2014, Aceves filed an "Emergency Motion to Reconsider Denying Temporary Spousal Support of Petitioner." This motion asserted as follows:

> As of May 1, 2014, [Myrna] or [Hudson] has taken complete control over the Quintana Roo residence and any rents or income from said property. Myrna has stated to [Aceves] that she has revoked the Power of Attorney for [Aceves]'s benefit and has refused to provide [Aceves] with any rent payments for the residence, if she is receiving any, until the criminal charges and litigation commenced by [Hudson] against Myrna and [Aceves] in Mexico have been resolved,[1] as Myrna has represented that it is her intent to use any rental income she may receive toward the costs of her legal expenses in responding to matters filed by [Hudson] in Mexico. The rent from the Quintana Roo residence was the only income, aside from spousal support, which has since been terminated, and child support, that [Aceves] was receiving for herself and the triplets.

The trial court set a hearing on all pretrial motions for June 18, 2014, with the hearing to be continued to June 25, 2014, if necessary. On June 18, the trial court heard testimony on whether Aceves was entitled to interim attorney's fees and expert fees pursuant to her February 26 motion. In testifying with regard to that motion, Hudson agreed that he had spent over $400,000 in attorney's fees in the prior ten months, including approximately $200,000 for attorneys in Mexico to litigate the controversy over the Quintana Roo property. He explained that that property was worth "something above $10 million for sure" and that he had pursued the litigation in Mexico in order "[t]o put [the property] into the [community] estate and under the jurisdiction of this case." Hudson testified that, overall, he has spent $1,076,028 in attorney's fees and expert fees in connection with the divorce, while Aceves has incurred $942,867.83 in such fees.

On June 18, the trial court also heard testimony regarding a motion Aceves had filed to transfer the custody issues to Flor-

---

1. Elsewhere in the motion, Aceves acknowledged that the criminal charges against her in Mexico were brought "for fraud ... related to the Quintana Roo residence title."

ida under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The trial court did not explicitly state that it was considering Aceves's April 17, 2014 or May 13, 2014 emergency motions on June 18.

The hearing continued on the following day, June 19, 2014. The trial court announced its intention to award both parties attorney's fees "in order to move on to more substantive matters." The court also discussed the scheduling of a hearing on a special appearance filed by Harry B. Swartout, an associate of Hudson who was named as a respondent in Aceves's divorce suit.[2] The court then took a recess and met with the parties and counsel in chambers. At the conclusion of the June 19 hearing, the following colloquy occurred:

> THE COURT: Let the record reflect that all counsel met in chambers with the Court. After meeting, there was an agreement reached with regard to the resetting of the matter. And, [Hudson's counsel], I believe you have the notes?
>
> [Hudson's counsel]: Yes, Your Honor, I do.
>
>> Pursuant to the agreement of the parties and the proceedings that we've been in, we agree as follows: That the hearing on June 25th will solely be scheduled for the special appearance of Mr. Swartout, and the hearings currently set for that day on other matters, such as the Motion for Partial Summary Judgment and other matters are going to be reset for a later date. The parties do not need to be present at the June 25th hearing unless they choose to be, and counsel present as necessary pursuant to the special

appearance and who's necessary to appear on behalf of their client as determined by counsel.

>> The parties agreed that they would mediate this case during the week of July 14th, that the mediator will be Stewart Gagnon of Fulbright. And if he's not available, we will get recommendations from him. And alternatively, we will seek the services of Cody Connor for mediation. That Mr. Hudson will pay temporary spousal support to Ms. Aceves beginning July 1st, in the amount of $5,000 per month. He will continue paying his temporary child support in the amount of $5,000 per month—okay. We're not going to be able to use Fulbright as mediator. So, we'll have to go on recommendation of Stewart Gagnon.
>
> [Aceves's counsel]: Okay.
>
> [Hudson's counsel]: From the funds that I . . . have in my trust account—
>
> [Aceves's counsel]: It's not something you'd want to waive a conflict about just for a mediation?
>
> [Hudson's counsel]: He can't.
>
>> . . . which is a little bit over $600,000 at this time. It shall be paid 200,000 to [Aceves]. [Aceves] has requested that it be made out to [Aceves's attorneys], for attorneys' fees; and 200,000 shall be distributed to [Hudson]. The remainder will be held in my trust account to be used to pay the invoices incurred by the discovery master and the receiver. And this is going to be characterized as a prefinal hearing division of presumed community property.

---

**2.** In her tenth amended petition for divorce, the live pleading at the time of this appeal, Aceves alleged that Hudson engaged in a conspiracy with Swartout "to hide and dissipate assets of the community to damage [Aceves]."

*Further, regarding the criminal matters in Mexico, Mr. Hudson will advise the court and counsel if the Mexican authorities request further action regarding the criminal complaint against Ms. Aceves or her daughter; and Mr. Hudson will not initiate further criminal complaints against Ms. Aceves in Mexico. Also, Mr. Hudson will not provide additional information regarding the Mexican criminal charges without first notifying the court and counsel just in case the authorities give him a request for information and a deadline.*

Let's see, both parties are required to attend all hearings with this Court unless otherwise specifically stated otherwise by the Court, such as on June 25th, the Court has specifically stated that they do not have to appear.

And lastly, the parties have an agreement wherein Mr. Hudson will provide a roundtrip plane ticket accommodations and a rental car for Ms. Aceves to use in Utah for the week of June 27th through June 29 so that she can spend that weekend with the children while they are visiting their family with Mr. Hudson in Utah.

[Aceves's counsel]: That he will be providing a plane ticket that gets her there no later than 6:00 p.m. on Friday. He is going to lease a condominium that he is staying in, and she's going to stay in that condominium. She's going to have the children until Monday morning, and he will provide this plane ticket. In addition, there's $300 that's due and owing to my client for the change fee on plane tickets on a prior hearing that needs to be paid by Monday at 5:00 p.m. Is that okay, [Hudson's counsel]?

[Hudson's counsel]: I don't know.

[Hudson]: Right now.

[Aceves's counsel]: Right now? Okay. He's going to pay that. And the mediation fee will be paid for out of the funds that are in [Hudson's counsel]'s trust account, and I'm expecting this to be a fairly pricy mediation.

THE COURT: Well, we had not discussed that last issue, but that will be ordered by the Court, in terms of the mediation fees.

[Aceves's counsel]: Okay. Everything else will be held in abeyance until somebody needs a hearing or the Court calls us back.

THE COURT: Okay. July 21st remains a jury selection date. Hopefully you-all will resolve your differences the week of the 14th. Otherwise, that's it until further orders of the Court. We'll see you-all on the 25th.

[Aceves's co-counsel]: Your Honor, on that weekend issue, there are couple of other items that were agreed to that I'd like to get on the record.

[Aceves's counsel]: Go ahead.

[Aceves's co-counsel]: One of them was that he's agreed that once she takes over the condo, he will stay away from her and the kids, at least 500 feet away. She will not seek out his family and she will leave his family alone there. If the flight is canceled or delayed, he will—there will be an exchange transportation for her there, and he will make up any time lost as additional time at the other end of the visitation.

THE COURT: Agreed?

[Hudson's counsel]: Yes, Judge.

THE COURT: All right. That's approved by the Court.

(Emphasis added.)

Later, at the hearing on June 25, 2014 on Swartout's special appearance, Aceves's counsel presented a proposed order to the trial court. The order stated in part:

BE IT REMEMBERED, on June 18 and June 19, 2014, came on to be considered Petitioner's Motion for Interim Attorney's Fees and First Supplement to Motion to Reinstate Temporary Support of Petitioner. After considering the evidence and hearing the arguments of counsel, it appears that the Motions should be and are hereby GRANTED.

. . . .

The Court further orders that Paul Hudson is ordered not to proceed with any further criminal prosecutions or other proceedings in Mexico against [Aceves] without advising the Court and having a hearing on the same. Paul Hudson is ordered not to initiate any further proceedings in Mexico or pursue pending proceedings pending further order of this court.

The trial court signed the order that day over Hudson's written objection. Hudson then perfected the instant appeal, contending that the order was subject to interlocutory appeal because it essentially constituted a temporary injunction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West, Westlaw through 2015 R.S.) (authorizing interlocutory appeal of order granting a temporary injunction).

Following the filing of the appeal, the parties participated in mediation and executed a Mediated Settlement Agreement ("MSA") on July 15, 2014, which contained, among other things, the following release clause:

All parties, entities release all lawsuits, claims and controversies between and by each as against the other including [Aceves]'s daughter and her family. Mutual releases on all issues/claims/complaints. [Hudson] shall terminate/dismiss all proceedings in Mexico against [Aceves] and/or her family and exonerates and exculpates [Aceves] and her family from any wrongdoing. [Hudson] shall not take any further action against [Aceves] or her family acting directly or through others.

On August 28, 2014, we abated the instant appeal so that the trial court could render an order effectuating the MSA. Various disputes arose regarding the MSA and Hudson filed a motion to set it aside on several grounds, including that Aceves fraudulently induced Hudson into entering into the MSA. Following a hearing, the trial court denied the motion to set aside the MSA by order dated June 1, 2015.[3]

Meanwhile, pursuant to a motion filed by Aceves, her marriage to Coleman was annulled by a court in Maryland on September 26, 2014. According to Aceves, the Maryland court found that her marriage to Coleman was void because Aceves's first marriage, in 1992 to Enrique Aubert Menchaca, was still valid at that time she purported to marry Coleman in 1996. She eventually divorced Menchaca in Mexico in 2001.

On July 9, 2015, a court in Quintana Roo annulled the marriage between Aceves and Hudson.[4] Hudson then filed a motion with

---

**3.** Hudson's initial motion to set aside the MSA was filed in October 2014 and his second amended motion to set aside the MSA was filed in May 2015. In the meantime, on February 17, 2015, Aceves filed motions with this Court to dismiss the appeal for want of prosecution and want of jurisdiction. We denied both motions on October 1, 2015.

**4.** A sworn translation of the Mexico court's annulment order states that, although Aceves "was still legally married" to Menchaca when

the trial court to reconsider his earlier motion to set aside the MSA, in light of the annulment order. The motion to reconsider also requested that the trial court dismiss the divorce proceedings for lack of subject matter jurisdiction. At a hearing on September 11, 2015, the trial court (1) orally granted the motion to set aside, (2) vacated the June 1, 2015 order "pending the appeal" of the Mexican court's annulment order, and (3) stayed enforcement of the MSA. Aceves filed a petition for writ of mandamus challenging these rulings, which we denied. *See In re Aceves*, No. 13–15–00568–CV, 2016 WL 1316562, at *1 (Tex. App.—Corpus Christi Mar. 10, 2016, orig. proceeding) (mem. op.) (noting that the trial court has not issued a final ruling on the MSA and "should be afforded an opportunity to do so" and that "the continually changing factual circumstances underlying this case should be addressed in the first instance by the trial court").

■ On October 1, 2015, we reinstated the instant appeal.[5]

## II. Discussion

By six issues on appeal, which we construe as five, Hudson argues: (1) the June 25, 2014 order was an abuse of discretion because it did not comport with the parties' Rule 11 agreement; (2) the order was an abuse of discretion because there was no hearing and Hudson therefore was deprived of his due process right to present evidence; (3) the order was not supported by sufficient evidence; (4) the MSA "has no effect on this proceeding" because its enforcement has been stayed; and (5) if we find that we lack jurisdiction over the interlocutory appeal and instead consider the appeal as a petition for writ of mandamus, there is no adequate remedy by appeal.

## A. Appellate Jurisdiction

■ We first consider whether we have jurisdiction over the interlocutory appeal. A temporary injunction is generally subject to interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) ("A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that ... grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65"). But an order under Subchapter F of Chapter 6 of the Texas Family Code, regarding temporary orders in divorce cases, is not subject to interlocutory appeal. Tex. Fam. Code Ann. § 6.507 (West, Westlaw through 2015 R.S.) ("An order under this subchapter, except an order appointing a receiver, is not subject to interlocutory appeal."). Subchapter F authorizes a divorce court to, among other things, "render an appropriate order, including the granting of a temporary injunction for the preservation of the property and protection of the parties as deemed

she married Coleman, "it is concluded that [Aceves] got divorced from her first marriage eight years and nine months later, and remained married to [Coleman], from whom, up until now, she has not gotten properly divorced ...." The order states that Aceves's marriage to Coleman "was also in force when [Aceves] entered into her third marriage with [Hudson] ...."

5. In her brief, Aceves asks us to take judicial notice of items filed as part of the record in

the 2015 mandamus which "are specifically cited below in this petition as support for the legal arguments herein (but none other)." We will take judicial notice of the entirety of the 2015 mandamus record. *See* Tex. R. Evid. 201; *Estate of York*, 934 S.W.2d 848, 851 (Tex. App.–Corpus Christi 1996, writ denied) (holding that an appellate court may take judicial notice of its own records in a case involving the same subject matter between the same parties).

necessary and equitable ...." *Id.* § 6.502(a) (West, Westlaw through 2015 R.S.).

Assuming that the order on appeal is properly characterized as a temporary injunction, we nevertheless find that an interlocutory appeal is not authorized in this situation. In 1994, the Waco Court of Appeals found that the predecessor to family code section 6.507 of the family code took precedence over section 51.014(a)(4) of the civil practice and remedies code and prohibited an interlocutory appeal of a temporary injunction in a divorce case. *See Cook v. Cook*, 886 S.W.2d 838, 839 (Tex. App.—Waco 1994, no writ) (construing former TEX. FAM. CODE ANN. § 3.58(g) ("An order issued under this section, except an order appointing a receiver, is not subject to interlocutory appeal.")). The Waco court noted that the Texas Supreme Court had found that a similar statute, prohibiting interlocutory appeals of temporary orders in suits affecting the parent-child relationship, barred interlocutory appeals notwithstanding section 51.014. *Id.* (citing *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (noting that "mandamus is an appropriate remedy under these facts, since the trial court's issuance of temporary orders is not subject to interlocutory appeal.")). Hudson has suggested no basis upon which to deviate from this reasoning. Accordingly, we conclude that we lack jurisdiction over the interlocutory appeal. *See* TEX. FAM. CODE ANN. § 6.507; *Cook*, 886 S.W.2d at 839; *see also Post v. Garza*, 867 S.W.2d 88, 89 (Tex. App.—Corpus Christi 1993, no writ) (noting that "the trial court's issuance of temporary orders in a divorce action is not subject to interlocutory appeal").

Rather than dismissing the proceeding outright for want of jurisdiction, we will instead, per Hudson's request, consider his appellate brief as a petition for writ of mandamus. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452–54 (Tex. 2011) (holding that appeals court had no jurisdiction over interlocutory appeal of order appointing an arbitrator, but ordering appeals court to consider appeal as a petition for writ of mandamus where appellant specifically requested such treatment); *Icon Benefit Administrators II, L.P. v. Mullin*, 405 S.W.3d 257, 261 (Tex. App.—Dallas 2013, no pet.) (finding no jurisdiction over appeal of order denying post-judgment motion to enforce pretrial protection order, but treating appeal as petition for writ of mandamus pursuant to appellant's request and conditionally granting mandamus relief).

## B. Standard of Review

■■■ Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Frank Kent Motor Co.*, 361 S.W.3d 628, 630 (Tex. 2012) (orig. proceeding). To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court committed a clear abuse of discretion for which the relator has no adequate remedy at law. *Id.* The relator has the burden of establishing both requirements of mandamus relief. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding).

■■■ A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The second requirement for mandamus relief, that the relator has no adequate remedy by appeal, "has no comprehensive definition" and is decided on a case-by-case basis. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317

(Tex. 2005) (orig. proceeding). Generally, an appellate remedy is "adequate" when the benefits of mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004).

## C. Clear Abuse of Discretion

■ By his first issue, Hudson argues that the challenged portion of the June 25, 2014 order constituted an abuse of discretion because it did not comport with the parties' agreement regarding Hudson's pursuit of legal proceedings against Aceves in Mexico, as dictated into the record by Hudson's counsel at the June 19, 2014 hearing.

■ We agree. An agreed judgment based upon a settlement agreement must be in strict or literal compliance with the terms of that agreement, and the judgment may not supply terms, provisions, or conditions not previously agreed upon by the parties. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976); *Matthews v. Looney*, 132 Tex. 313, 123 S.W.2d 871, 872 (1939); *Donzis v. McLaughlin*, 981 S.W.2d 58, 63 (Tex. App.—San Antonio 1998, no pet.). The record shows clearly that, at the conclusion of the June 19, 2014 hearing, Hudson's counsel was attempting to dictate a Rule 11 agreement into the record. *See* Tex. R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."). It is further clear that the June 25, 2014 order is intended to

effectuate that agreement. The order, however, does not strictly or literally comply with the terms as dictated into the record. *See Vickrey*, 532 S.W.2d at 292; *Matthews*, 123 S.W.2d at 872. In particular, the order prohibits Hudson from engaging in "any further criminal prosecutions or other proceedings in Mexico" against Aceves and from "initiat[ing] any further proceedings in Mexico"; whereas the terms of the parties' agreement, as dictated into the record on June 19, applied only to criminal proceedings.

In her brief, Aceves argues that the June 25 order comported with an "in chambers agreement" reached by the parties. But there was no record made of any such agreement; therefore, even if such an agreement were made, it would be unenforceable. *See* Tex. R. Civ. P. 11. We conclude that the order was an abuse of discretion insofar as it purported to reflect an agreement between the parties. Hudson's first issue is sustained.

■ Aceves further contends that the trial court was nevertheless justified in rendering the challenged order because there was evidence adduced to support it on June 18. But the transcript of the June 18 proceedings reflects that the trial court did not consider Aceves's "Emergency Motion for Further Temporary Orders" or her "Emergency Motion to Reconsider Denying Temporary Spousal Support of Petitioner," which were the only motions filed by Aceves to request an order enjoining Hudson from engaging in or initiating legal proceedings against Aceves against Mexico.[6] Although Hudson gave testimony regarding the proceedings in Mexico on June 18, it is apparent from the record

---

**6.** Aceves notes correctly that "all of [her] pending motions contained an allegation of [Hudson]'s unfettered expenditure of community funds on litigation against [Aceves] in Mexico and requested relief as a result of the same." However, only the emergency motions requested an order enjoining Hudson from initiating new proceedings or engaging in existing proceedings.

that the emergency motions were not before the court at the hearing. At the beginning of the hearing, the trial court explicitly announced that it was considering Aceves' motion for interim attorney's fees, and it then heard evidence on that motion, including Hudson's testimony regarding proceedings in Mexico and fees incurred to his attorneys in Mexico. After evidence regarding attorney's fees was presented, the parties rested and the trial court announced that it was then going to consider Aceves's motion to transfer custody issues to Florida under the UCCJEA, and it heard evidence on that motion, including further testimony by Hudson. After evidence regarding the custody motion was heard, the trial court adjourned and no further testimony was taken.

The emergency motions were not discussed, and there was never any argument given as to whether injunctive relief was proper, either before or after the announcement of the parties' in-chambers agreement. Therefore, to the extent the June 25 order may be considered as having been rendered based upon evidence presented, it is an abuse of discretion and violative of Hudson's due process rights because there was no hearing on the motions requesting the order. *See Elliott v. Lewis*, 792 S.W.2d 853, 855 (Tex. App.—Dallas 1990, no writ) ("[A] trial court is not authorized to enter a temporary injunction order against a party before that party has had an opportunity to present its defenses and has rested its case."); *Kramer Trading Corp. of Tex. v. Lyons*, 740 S.W.2d 522, 524 (Tex. App.—Houston [1st Dist.] 1987, no writ) (same); *see also* TEX. FAM. CODE ANN. § 6.502 (providing that the trial court may render temporary orders in a divorce

case "after notice and hearing"). We sustain Hudson's second issue.[7]

■■■ Hudson argues by his fourth issue that he is not precluded from obtaining relief in this proceeding merely due to the fact that he entered into the MSA shortly after the challenged order was rendered. Contrariwise, Aceves contends that Hudson's agreement in the MSA to "terminate/dismiss all proceedings in Mexico against [Aceves]" and to "not take any further action against [Aceves]" constitutes a waiver on the part of Hudson and precludes us from setting aside the June 25, 2014 order. *See, e.g., Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.").

■■■ The MSA is not before us and was not before the trial court at the time it rendered the order being challenged in this proceeding. It is axiomatic that an appellate court reviews the actions of the trial court based on the record before the court at the time it makes its ruling. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex. 1990) (orig. proceeding) (concluding that where evidence and rule changes were not presented to the trial court, they did "not form a basis for us to find that the trial court abused its discretion in this mandamus proceeding"); *Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding) (holding that in an original proceeding, the appellate court may not consider evidence that was not part of the record before the trial court except to decide its own jurisdiction); *In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st

7. Because of our conclusion that the June 25 order did not reflect the parties' Rule 11 agreement and was not based on evidence adduced at a hearing, we need not address

Hudson's third issue, arguing that the order was not supported by sufficient evidence. *See* TEX. R. APP. P. 47.1.

Dist.] 2003, orig. proceeding) ("We will not consider exhibits that were not part of the trial court record at the time of the hearing on the motion that is the subject of this original proceeding."); *see also Methodist Hosps. v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.). With regard to temporary injunctions in particular, the Texas Supreme Court has stated:

> Events taking place subsequent to the issuance of a temporary injunction may afford a basis for a modification of the order by the trial court but unless such occurrences render the cause for injunctive relief entirely moot or academic ... our action must be controlled by the record made in the trial court at the time the injunction was issued.

*Univ. of Tex. v. Morris*, 162 Tex. 60,344 S.W.2d 426, 429 (1961).[8] Accordingly, we do not consider the MSA in determining whether the trial court abused its discretion by rendering the June 25, 2014 order.[9] We sustain Hudson's fourth issue.

### D. No Adequate Appellate Remedy

■ Finally, we consider Hudson's fifth issue, by which he argues that, if we construe his brief as a petition for writ of mandamus, he has no adequate remedy by appeal.

We conclude that Hudson has no adequate remedy by appeal because the proceedings in Mexico—which the complained-of injunction prohibits Hudson from participating in—are of particular import to the ultimate issues facing the trial court. Specifically, the trial court must be able to consider, in the first instance, the effect of the two annulment orders on the

status of the MSA and on the case generally. *See Dancy*, 815 S.W.2d at 549 (noting, where the trial court rendered temporary orders in a divorce case, that "mandamus is an appropriate remedy under these facts, since the trial court's issuance of temporary orders is not subject to interlocutory appeal.").

Aceves argues that mandamus is appropriate "only when parties are in danger of permanently losing substantial rights," *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 306 (Tex. 1994) (orig. proceeding), and that the June 25, 2014 order does not permanently deprive Hudson of substantial rights because it merely requires Hudson "to advise the court and have a hearing" before going forward with any legal proceeding against Aceves in Mexico. We disagree. The order enjoins Hudson from going forward with or initiating any civil or criminal proceedings against Aceves in Mexico. This is not changed by the fact that the order contemplates a motion and hearing should Hudson wish to modify or vacate the injunction.

For the foregoing reasons, Hudson's fifth issue is sustained.

### III. CONCLUSION

We conditionally grant mandamus relief. The trial court is directed to vacate the June 25, 2014 order and instead render judgment effectuating the precise terms of the parties' June 19, 2014 Rule 11 agreement. *See Vickrey*, 532 S.W.2d at 292. In particular, the order effectuating the Rule 11 agreement shall provide that, until further order of the court, Hudson must: (1) advise the court and counsel if the Mexican

---

8. Aceves does not contend that either the Maryland or Mexico annulment order renders this proceeding moot or academic.

9. In any event, the trial court has since granted Hudson's motion to set aside the MSA and has stayed enforcement of the MSA. There-

fore, even if we were to consider factual circumstances arising after the rendition of the challenged order, we cannot say that Hudson waived his complaints regarding the June 25, 2014 order merely by entering into the MSA.

authorities request further action regarding the criminal complaint against Aceves or her daughter; (2) not initiate further criminal complaints against Aceves in Mexico; and (3) not provide additional information regarding the Mexican criminal charges without first notifying the court and counsel. The writ will issue only in the event the trial court fails to comply.