

## NUMBER 13-24-00069-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

### IN THE MATTER OF THE MARRIAGE OF
### SABA A. RIZVI AND MASI KHAJA AND IN THE
### INTEREST OF D.K. AND A.K., CHILDREN

---

### ON APPEAL FROM THE 201ST DISTRICT COURT
### OF TRAVIS COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Silva**

Appellant Masi Khaja appeals from the trial court's entry of a final decree of divorce

from appellee Saba A. Rizvi.[1] By two issues, Khaja argues that the trial court erred by

---

[1] This case is before the Court on transfer from the Third Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

(1) signing a judgment that failed to conform with the parties' settlement agreement and (2) denying his motion to reopen the evidence. We affirm in part and reverse and render in part.

## I. BACKGROUND

Khaja and Rizvi were married and had two minor children. Rizvi filed for divorce in 2021. Prior to trial, the parties reached a partial mediated settlement agreement on some child-related issues. On July 17, 2023, the parties proceeded to a bench trial on the remaining child-related issues and certain property issues concerning their marital estate. They owned several businesses in Colorado, including a majority share in DRK Associates, LLC (DRK Associates). During trial, Khaja and Rizvi presented expert witnesses who testified as to the value of the business assets. Rizvi's counsel also asked Khaja about the parties' ownership interest in DRK Associates, "So according to this P-63, right now, [Rizvi] has a 40 percent interest, whether it's separate or community; you have a 40 percent interest; [Dale] Beede has a 10 percent; and your brother, Mr. Khaja, has a 10 percent interest, correct?" Khaja responded, "Yes."[2] Khaja and Rizvi each requested award of the remaining ownership interest in DRK Associates. On the third day of trial, the parties announced they had reached an agreement on the remaining child-related issues and property issues. The parties further announced that they would like to attend mediation on the issues related to the transfer of DRK Associates. Rizvi's counsel elicited the following testimony in open court from Rizvi concerning the parties' agreement and the specific issues that would be mediated:

| [Rizvi's counsel]: | [P]er the terms of the spreadsheet that's |
| --- | --- |

---

[2] The record indicates that Beede is a "commercial real estate broker by trade" who owns a minority share in DRK Associates.

|  |  |
|---|---|
|  | attached to [Joint Exhibit 1], the gist of it is that you're awarded [DRK Associates]. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And that's an 80 percent interest. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And then you're awarded the marital residence. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And then . . . each of you is taking your own debts or assets. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And at the end, . . . there's an approximate $252,000 note that you will pay to [Khaja]. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And we are going to go to mediation to determine how to address the security for that. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And you agree that the note will either be secured by the house or the interest in DRK Associates. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And then [Khaja] is going to . . . communicate with the bank in transferring the . . . shares in DRK Associates to you. Correct? |
| [Rizvi]: | Correct. |
| [Rizvi's counsel]: | And you have agreed to refinance the marital residence within 24 months and provide |

3

notification to [Khaja]. Correct?

[Rizvi]: Correct.

. . . .

[Rizvi's counsel]: Now, one of the things that we didn't have time to address today—but you're going to go to mediation to address—details regarding the securities, indemnities, protections, and documents in you assuming DRK Associates. Correct?

[Rizvi]: Yes.

[Rizvi's counsel]: And we're asking that if we can't agree on all forms that we [would] be allowed to reappear before Judge . . . to address the form of those documents. Correct?

[Rizvi]: Correct.

[Rizvi's counsel]: And then the parties will direct [Beede] to continue to run the day-to-day operations of the company and to pay expenses for the company but only company expenses as they become due. Correct?

[Rizvi]: Correct.

[Rizvi's counsel]: And no other distributions or payments to be made after today. Correct?

[Rizvi]: Correct.

[Rizvi's counsel]: And then [Khaja] will turn over the checks and payment instruments in his possession within three business days. Correct?

[Rizvi]: Yes.

. . . .

[Rizvi's counsel]: So we [have] had significant discussion—you understand that in taking on DRK Associates,

4

|                    | we talked about the risks, and you're safe assuming those risks and taking on that asset. Correct? |
| [Rizvi]: | Yes. |
| [Rizvi's counsel]: | And are you asking the [trial c]ourt to approve your agreement and grant your divorce? |
| [Rizvi]: | Yes, sir. |

Khaja's counsel agreed and the following exchange occurred:

| [Khaja's counsel]: | [Khaja], did you hear—or did you see the terms that we agreed to that we looked at in [Joint Exhibit 1]? |
| [Khaja]: | Yes, I did. |
|  | . . . . |
| [Khaja's counsel]: | And as it relates to the property division that was in [Joint Exhibit 1] we looked at earlier that's now been marked, do you think that's a just and right division of the community estate? |
| [Khaja]: | Yes, I do. |
| [Khaja's counsel]: | And are you asking the [trial c]ourt to finalize a divorce consistent with those terms and to pronounce the divorce effective today? |
| [Khaja]: | Yes, I do. |
|  | . . . . |
| THE COURT: | Okay. So I'm going to [send the] parties to mediation re[garding] security— |
|  | . . . . |
| [Rizvi's counsel]: | Securities, indemnities, protections, and documents in [Rizvi] assuming DRK [Associates] . . . . |

The parties also admitted "Joint Exhibit 1," which was an email sent by Rizvi's counsel to Kimberly Edgington, a paralegal at the firm representing Rizvi. The email stated in part: "The parties shall attend mediation to address the details regarding securities, indemnities, protections and documents in [Rizvi] assuming DRK [Associates]." The email further stated:

> The parties agree that if they cannot agree on the terms of the note they shall re-appear before Judge . . . to address that dispute. Parties to direct [Beede] to continue to run the day-to-day operations of the company and to pay expenses for the company for only company expenses as they become due. No other distributions/payments to be made. [Khaja] to turn over all checks/payment instruments within three business days.

The email was not signed by either Khaja or Rizvi, nor was it signed by their respective attorneys.

On November 3, 2023, Khaja filed a "Motion to Sign," requesting the trial court to sign the proposed final decree of divorce "attached to [his] petition." On November 8, 2023, the trial court conducted a hearing on said motion. On the same day but before the hearing, Khaja filed his "Amended Motion to Sign and Motion to Reopen the Evidence." During the hearing, Khaja argued the evidence should be reopened to address his concerns of whether Rizvi would have to refinance DRK Associates and his motion was denied. The trial court and the parties also specifically discussed in open court what terms should be included in the final decree of divorce at the hearing. Rizvi objected to specific language in Khaja's proposed decree that restricted the distributions related to DRK Associates on the basis that such language was inconsistent with the parties' Rule 11 agreement. The trial court agreed with Rizvi and entered a final decree of divorce without the language. There was no further clarification by either party regarding the distributions.

6

The final decree of divorce stated, in pertinent part, the following:

> As of the Effective Date[:] (i) [Khaja] hereby conveys, assigns, and/or transfers to Rizvi all of [Khaja]'s right, title, and interest in and to his membership interests and/or membership units in [DRK Associates], which is forty percent (40%) of the ownership interest in [DRK Associates], or 80 total units, free and clear of all encumbrances (other than any lien or encumbrance that may exist[] against these membership interests and/or membership units as a result of financing through the Bank of Colorado, loan numbers x8503, x8504[,] and x0805 and restrictions on subsequent transfers under applicable securities laws or other legal requirements); (ii) [Khaja] hereby agrees to fully withdraw as a Member of [DRK Associates] and resign as Manager of [DRK Associates;] (iii) Rizvi hereby accepts the transfer, assignment, and/or conveyance of all of [Khaja]'s right, title, and interest in, as well as any debt and other obligations, related to his membership interests and/or membership units in [DRK Associates] (the membership interests and/or membership units in [DRK Associates] that [Khaja] is hereby transferring, assigning, and/or conveying to Rizvi is hereinafter referred to as "the Assigned Interest"); and (iv) pursuant to Section 3.2 of the Second Amended Operating Agreement, Rizvi is hereby appointed as, and she accepts the appointment of, Manager of [DRK Associates].

The agreed final decree of divorce was signed on November 15, 2023, and did not include any information regarding distributions from DRK Associates. This appeal ensued.

## II.     DIVORCE DECREE

Khaja first argues that the trial court erred by signing a decree of divorce that contained terms not agreed to by the parties. He specifically contends that the trial court erroneously signed the final decree of divorce regarding DRK Associates "[b]ecause the [trial c]ourt signed [Rizvi]'s version of the decree that included a corporate assignment with no restriction on distributions."

### A.     Standard of Review and Applicable Law

We review a trial court's division of property under an abuse of discretion standard. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018). A trial court has wide discretion

7

in making a just and right division, and we presume the trial court properly exercised its discretion. *Banker v. Banker*, 517 S.W.3d 863, 869–70 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (citing *Handley v. Handley*, 122 S.W.3d 904, 907 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)). Generally, a trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *In re K.L.C.*, 672 S.W.3d 734, 743 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). However, the "determination of whether the property division decreed in a divorce constitutes an abuse of discretion presents a legal rather than a factual question for appellate review," for which "the trial court is entitled to no deference." *Bradshaw*, 555 S.W.3d at 543 (quoting *Mann v. Mann*, 607 S.W.2d 243, 244 (Tex. 1980)). That is because the "trial court has no discretion in determining what the law is or applying the law to the facts." *Id.* (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017)).

Pursuant to the Texas Family Code, "[i]n a decree of divorce . . . , the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party." TEX. FAM. CODE ANN. § 7.001. "[T]he phrase 'estate of the parties' encompasses the community property of a marriage." *Pearson v. Fillingim*, 332 S.W.3d 361, 362 (Tex. 2011) (per curiam). "Although a trial court does not have to divide the marital estate equally, it must do so equitably." *Kaftousian v. Rezaeipanah*, 511 S.W.3d 618, 622 (Tex. App.—El Paso 2015, no pet.); *see also Resendiz v. Martinez*, No. 13-22-00060-CV, 2023 WL 4782675, at *7 (Tex. App.—Corpus Christi–Edinburg Jul. 27, 2023, no pet.) (mem. op.); *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981) (listing non-exclusive factors a trial court considers in an unequal division of

the marital estate). "There is generally no abuse of discretion on grounds of insufficiency if some probative evidence supports the trial court's findings." *Banker*, 517 S.W.3d at 869; *see also B.K. v. T.K.*, No. 02-19-00472-CV, 2021 WL 2149621, at *3 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.) ("Evidence is legally insufficient to support a decree's property division when no evidence of the divided property's value is adduced.").

Texas Rule of Civil Procedure 11 states that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. "To be 'entered of record' includes the dictation of the agreement into the trial court record." *Kanan v. Plantation Homeowner's Ass'n*, 407 S.W.3d 320, 328 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.). "Specifically, the requirements for a Rule 11 agreement are satisfied 'when the terms of the agreement [are] dictated before a certified shorthand reporter, and the record reflect[s] who [is] present, the terms of the settlement, and the parties' acknowledgement of the settlement.'" *Id.* (quoting *Cantu v. Moore*, 90 S.W.3d 821, 824 (Tex. App.—San Antonio 2002, pet. denied)).

To be effective, a written Rule 11 agreement must be "complete within itself in every material detail . . . and . . . contain[] all of the essential elements of the agreement." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (per curiam) (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). "The purpose of Rule 11 is to ensure that agreements of counsel affecting the interests of their clients are not left to the fallibility of human recollection and that the agreements themselves do not become the sources of controversy." *Kanan*, 407 S.W.3d

9

at 327. The trial court has a ministerial duty to enforce a valid Rule 11 agreement. *Shamrock*, 540 S.W.3d. at 560; *In re Marriage of Comstock*, 639 S.W.3d 118, 129 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Tex. Tax Sols., LLC v. City of El Paso*, 593 S.W.3d 903, 912 (Tex. App.—El Paso 2019, no pet.).

We construe Rule 11 agreements under the same rules that we apply to construe contracts. *Shamrock*, 540 S.W.3d at 560; *Transam. Corp v. Braes Woods Condo Ass'n*, 580 S.W.3d 733, 737 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Our primary objective in construing a contract is to ascertain and give effect to the parties' intent as expressed in the contract. *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023) (per curiam) (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018)). We determine the scope of a Rule 11 agreement by examining the words used, the surrounding circumstances, the allegations in the pleadings, and the attitude of the parties with respect to the issues. *In re Marriage of Comstock*, 639 S.W.3d at 129; *In re Hulcher Servs., Inc.*, 568 S.W.3d 188, 192 (Tex. App.—Fort Worth 2018, orig. proceeding); *Lesikar v. EOG Res., Inc.*, 236 S.W.3d 457, 458–59 (Tex. App.—Amarillo 2007, no pet.).

"The issue of whether a Rule 11 settlement agreement fails for lack of an essential term is generally a question of law to be determined by the court." *Kanan*, 407 S.W.3d at 330. "As long as the parties agree as to the essential or material terms of a contract, the agreement may leave other non-essential provisions open for future adjustment and agreement." *Id.*

"An agreed judgment based upon a settlement agreement must be in strict or literal compliance with the terms of that agreement, and the judgment may not supply terms,

provisions, or conditions not previously agreed upon by the parties." *Hudson v. Aceves*, 516 S.W.3d 529, 538 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). Further, "[w]hen a consent judgment is rendered without consent or is not in strict compliance with the terms of the agreement, the judgment must be set aside." *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006).

## B.     Analysis

We begin by examining whether the parties' agreement announced in open court was an enforceable Rule 11 agreement. *See* TEX. R. CIV. P. 11. In this regard, the dispositive issue is whether the record contained the essential elements of the parties' Rule 11 agreement. *Padilla*, 907 S.W.2d at 460. We determine whether a term is essential or material considering the circumstances surrounding the agreement. *Amedisys v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014); *Jennings v. Jennings*, 625 S.W.3d 854, 862 (Tex. App.—San Antonio 2021, pet. denied). Essential terms are those that the parties would reasonably regard as vitally important elements of their bargain. *Boozer v. Fischer*, 674 S.W.3d 314, 324 (Tex. 2023); *Jennings*, 625 S.W.3d at 862; *Kanan*, 407 S.W.3d at 330. Whether a term is essential is a question of law and subject to de novo review. *Jennings*, 625 S.W.3d at 862; *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 142 (Tex. App.—Dallas 2012, no pet.).

Because neither the parties' nor their attorneys signed the email admitted into evidence as "Joint Exhibit 1," the only evidence in the record before us regarding the Rule 11 agreement consists of the statements made in open court by Khaja's and Rizvi's counsel. *See* TEX. R. CIV. P. 11 (explaining that to be enforceable, a Rule 11 agreement must either be "in writing, signed and filed with the papers as part of the record, or . . . be

11

made in open court and entered of record"). Here, the terms of the parties' Rule 11 agreement were dictated on the record in open court before a certified shorthand reporter, both parties were present, and the terms of the agreement and the parties' acknowledgement of the agreement were put on the record. *See Kanan*, 407 S.W.3d at 328. Furthermore, the parties' representations on the record in open court included references to all essential terms of their agreement, including securities, indemnities, protections, and documents and whether the trial court or the mediator would make that determination. *See Padilla*, 907 S.W.2d at 460. We thus conclude that the requirements for a Rule 11 agreement were satisfied and the agreement was enforceable. *See* TEX. R. CIV. P. 11; *see Padilla*, 907 S.W.2d at 460.

Because Khaja and Rizvi entered a valid Rule 11 agreement, the parties' final decree of divorce must be in strict or literal compliance with the terms of their agreement. *See Hudson*, 516 S.W.3d at 538. Here, the final decree of divorce signed by the trial court omitted a term that was previously agreed upon by the parties. *See id.* On July 19, 2023, the parties agreed in open court regarding distributions from DRK Associates. When asked by Rizvi's counsel, "And no other distributions or payments to be made after today. Correct?" Rizvi responded, "Correct." Khaja also agreed in open court to the terms of the agreement. The final decree of divorce did not contain this agreed upon term. Thus, the decree was not in strict compliance with the parties' settlement agreement. *See id.*

Rizvi responds that "[t]he circumstances surrounding the [s]ettlement [a]greement . . . clearly indicate[] that [the] purported restriction on distributions was only intended to continue until the finalization of the final order and relevant documents." In support of her argument, Rizvi contends that "[i]n construing a written contract, a court is

charged with a duty to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument," and she directs us to the paragraph regarding the distributions from DRK Associates located in "Joint Exhibit 1." However, because this exhibit was not signed by either party nor their respective attorneys, it does not constitute a valid Rule 11 agreement. *See* TEX. R. CIV. P. 11. We confine our review of Khaja's issue to the only valid Rule 11 agreement involved in this case—the agreement that was pronounced in open court. *See id.* The record demonstrates that the parties' valid Rule 11 agreement in open court did not include language limiting the disputed term's duration. Accordingly, we reject Rizvi's argument that the disputed term was not meant to be part of the final decree of divorce.

We conclude that the trial court erred in signing the final decree of divorce that did not contain the omitted agreed upon term. *See Chisholm*, 209 S.W.3d at 98. Khaja's first issue is sustained.

### III.     REOPENING OF THE EVIDENCE

By his second issue, Khaja argues that the trial court erred by failing to reopen the evidence to allow additional testimony from the parties and a representative from the Bank of Colorado regarding the securities, indemnities, protections, and documents in Rizvi assuming DRK Associates.

### A.     Standard of Review and Applicable Law

Texas Rule of Civil Procedure 270 allows a trial court to permit additional evidence to be offered at any time when it clearly appears to be necessary to the due administration of justice. *See* TEX. R. CIV. P. 270. Rule 270 allows, but does not require, the court to permit additional evidence. *See id.*; *see also Krishnan v. Ramirez*, 42 S.W.3d 205, 223

13

(Tex. App.—Corpus Christi–Edinburg 2001, no pet.). In determining whether to grant a motion to reopen, the trial court considers whether: "(1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause an injustice." *See Rollins v. Tex. College*, 515 S.W.3d 364, 371 (Tex. App.—Tyler 2016, pet. denied). The decision to reopen the evidence "is within the trial court's discretion and will be disturbed on appeal only when clear abuse has been shown." *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (quoting *Guerrero v. Standard Alloys Mfg. Co.*, 598 S.W.2d 656, 658 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.) (citations omitted)). However, a trial court does not abuse its discretion by refusing to reopen a case after evidence is closed if the party seeking to reopen has not shown diligence in attempting to produce the evidence in a timely fashion. *See id.* "To show diligence, a party must establish either that the evidence was previously unavailable or that the party had no opportunity to present the proof to the court before judgment." *Rollins*, 515 S.W.3d at 371. "A trial court should exercise its discretion liberally in the interest of justice to permit both parties to fully develop the case." *Karam v. Brown*, 407 S.W.3d 464, 472 (Tex. App.—El Paso 2013, no pet.).

**B. Analysis**

During the November 8, 2023 hearing, Khaja informed the trial court that "[he] has several million dollars of personal guarantees associated with DRK [Associates]" and that "it became apparent there wasn't an agreement on this issue." Khaja urged the trial court to allow him to present additional testimony from himself regarding "when he called the Bank of Colorado person" and testimony from a Bank of Colorado representative

14

regarding his "financial state" and "debt-to-income ratio." Specifically, Khaja wished to elicit additional testimony regarding whether Rizvi would be required to refinance DRK Associates. Khaja's counsel informed the trial court that the refinancing of DRK Associates is directly "related to the securities that was reserved from our announced agreement." The trial court specifically informed Khaja's counsel that "[r]efinance is not securities, indemnities, et cetera." The trial court further stated that, "If you had intended for her to refinance [DRK Associates], you should have said so. I don't believe that refinance is included, so I'm going to deny the Motion to Reopen the Evidence."

We conclude the trial court did not abuse its discretion because Khaja did not show that he used diligence in attempting to produce the requested evidence in a timely fashion. *See Lopez*, 55 S.W.3d at 201. The record shows that the petition for divorce had been on file since 2021, and the trial concluded in July 2023. In addition, Khaja provides no specific reasons in his "Motion to Reopen the Evidence" as to why the evidence he sought to present was previously unavailable and does not argue that he did not have an opportunity to present the evidence to the trial court before judgment. *See Rollins*, 515 S.W.3d at 371. In fact, the record shows that Khaja waited until the day of the hearing, over four months after the trial court orally pronounced the divorce and divided the marital estate, to urge the trial court to reopen the evidence. Khaja merely asserted in his motion that "[he] was diligent in obtaining evidence" without any further elaboration or evidence of same.

Accordingly, we hold that the trial court did not abuse its discretion in denying Khaja's motion to present additional evidence based on his failure to diligently produce such evidence. Khaja's second issue is overruled.

15

## IV.     Conclusion

We reverse the trial court's judgment and render a judgment that conforms to the parties' Rule 11 agreement. We affirm the trial court's judgment in all other respects.

CLARISSA SILVA
Justice

Delivered and filed on the
30th day of December, 2025.