**AFFIRM; and Opinion Filed July 27, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00530-CV

## IN THE INTEREST OF Y.Z.C.T., A CHILD

**On Appeal from the 303rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-15-01039**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Francis, and Justice Thomas[1]
Opinion by Justice Thomas

Mother appeals the trial court's judgment appointing Mother and Paternal Aunt as joint managing conservators, Paternal Grandmother as a non-parent possessory conservator, and Father as a possessory conservator of Y.Z.C.T. In a single issue, Mother contends the judgment is void because Paternal Aunt did not sufficiently plead or prove that she had standing to seek conservatorship of Y.Z.C.T. at the time she filed suit. We overrule Mother's issue and affirm the trial court's judgment.

### Background

Paternal Aunt filed a suit affecting the parent-child relationship (SAPCR) on January 22, 2015 seeking, among other things, conservatorship of Y.Z.C.T. Paternal Aunt alleged she had standing to bring the SAPCR because she was "the person with actual possession of the child."

---

[1] The Hon. Linda Thomas, Chief Justice (Ret.), sitting by assignment.

Paternal Aunt did not specify a particular standing statute in her original petition. She and Paternal Grandmother later filed a supplemental petition adding Paternal Grandmother as a party seeking conservatorship of Y.Z.C.T. They did not allege any additional jurisdictional facts.

At trial, Mother testified that she was served with the pleadings in the case while she was incarcerated in Henderson, Texas. According to Mother, while she was incarcerated, Paternal Aunt, Paternal Grandmother, and Maternal Grandmother took care of Y.Z.C.T. At the time, Paternal Grandmother and Maternal Grandmother lived together. By the time of the trial in 2017, Y.Z.C.T. was twelve years old, living with Paternal Aunt, and Mother's supervised visitation had been "lifted." Y.Z.C.T. had not lived with Mother for six or seven years. Mother did not challenge Paternal Aunt's standing.

After hearing the evidence, the trial court found, among other things, (1) Paternal Aunt and Paternal Grandmother had actual care, custody, and control of Y.Z.C.T. for at least six months prior to the filing of this case; (2) Mother was incarcerated when she was served with the petition; and (3) Y.Z.C.T. had not resided with Mother for the last six years.

Mother filed a motion for new trial challenging, for the first time, Paternal Aunt's standing to file an original suit requesting managing conservatorship because she did not plead or prove standing under section 102.004 of the Texas Family Code.[2] The trial court conducted a hearing on Mother's motion.

At that hearing, Maternal Grandmother testified that she has had "care, custody, and control" of Y.Z.C.T. since she was born in September 2004. Maternal Grandmother and Paternal Grandmother lived together with Y.Z.C.T. for about two years, until Maternal Grandmother moved out in August of 2014. According to Maternal Grandmother, Y.Z.C.T. never lived with Paternal

---

[2] Section 102.004 of the family code provides that a grandparent or another relative within the third degree of consanguinity may file an original suit requesting managing conservatorship if there is satisfactory proof that (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit. TEX. FAM. CODE ANN. § 102.004(a) (West Supp. 2017).

Aunt and Paternal Aunt's statements to the trial court and to social services that Y.Z.C.T. had been in Paternal Aunt's possession since Y.Z.C.T. was two years old were not true. Rather, Maternal Grandmother said Paternal Aunt saw Y.Z.C.T. "every now and then." She also acknowledged, in response to counsel's question, that the social study contained an entry that Y.Z.C.T. did not "spend much time with [Paternal] Aunt."[3] Maternal Great-Grandmother and Mother corroborated this testimony, saying Y.Z.C.T. had always lived with Maternal Grandmother and had never lived with Paternal Aunt. Similarly, a long-time friend and former roommate of Maternal Grandmother's testified that Y.Z.C.T. "had never lived" with Paternal Aunt. Mother did admit, however, that Paternal Aunt and Paternal Grandmother had always established Y.Z.C.T.'s address for school purposes.

Paternal Grandmother testified the previous testimony was not truthful. According to Paternal Grandmother, she and Paternal Aunt have had possession of Y.Z.C.T. since she was three years old and that Paternal Grandmother and Paternal Aunt have "always had [Y.Z.C.T.] in school." They used Paternal Grandmother's address for school because she had a house and Paternal Aunt had an apartment. Paternal Grandmother began to explain that Y.Z.C.T was in Paternal Aunt's possession because Paternal Grandmother had to "be at work at 6:00 a.m., so she would stay –" but did not finish her explanation after the trial court sustained an objection to her testimony as nonresponsive. Paternal Grandmother testified she and Paternal Aunt have always been a "major part" of Y.Z.C.T.'s life and she and Paternal Aunt were more involved than Mother. Paternal Grandmother testified that she and Paternal Aunt provide for and participate in Y.Z.C.T's extracurricular activities, including "select cheerleading." Neither Mother nor Maternal Grandmother financially contribute to those expenses and "rarely" attend those outings.

---

[3] Although the trial court took judicial notice of the "entire file" during the hearing on the motion for new trial, our record does not contain the social study nor a request to the District Clerk for the social study to be included in the clerk's record.

Following the hearing, the trial court denied Mother's motion for new trial. This appeal followed.

## Applicable Law

A party seeking conservatorship of a child must have standing to seek such relief. *In re I.I.G.T.*, 412 S.W.3d 803, 805 (Tex. App.—Dallas 2013, no pet.); *In re S.S.J.-J.*, 153 S.W.3d 132, 134 (Tex. App—San Antonio 2004, no pet.). Standing is implicit in the concept of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Because subject-matter jurisdiction is essential to the authority of a court to decide a case, a party's lack of standing deprives the court of subject-matter jurisdiction and renders subsequent trial-court action void. *Id.*

Here, the trial court found that it had jurisdiction of the case and all the parties, but made minimal findings regarding its determination of standing. Consequently, we must draw every reasonable inference and imply such fact findings as necessary to support the legal conclusion that Paternal Aunt had standing. *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App—Dallas 2008, no pet.). We review the trial court's conclusion that Paternal Aunt had standing de novo; but, to the extent relevant facts are disputed, we review the implied findings of fact supporting that conclusion for legal and factual sufficiency. *Id.*[4]

When, as here, standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis. *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App—Houston [14th Dist.] 2005, orig. proceeding) (citing *Tex. Dep't. of Protective and Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 859–61 (Tex. 2001)). When standing has been sufficiently alleged in the pleadings, and the jurisdictional challenge attacks the existence of jurisdictional facts, the trial court considers

---

[4] When an issue of standing is resolved prior to trial, in contrast, we take as true all evidence favorable to parties alleging standing, indulging every reasonable inference and resolving any doubts in their favor. If there is a fact question regarding standing, that question must be resolved by the fact finder. *See In re M.P.B.*, 257 S.W.3d at 808; *In re M.J.G.*, 248 S.W.3d 753, 758 (Tex. App—Fort Worth 2008, no pet.).

the evidence submitted by the parties to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). The burden of proof on the issue of standing is on the party asserting standing. *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd). In a family-law case, when the petitioner is statutorily required to establish standing with "satisfactory proof," the evidentiary standard is a preponderance of the evidence. *Id.*, *In re A.M.S.*, 277 S.W.3d 92, 96 (Tex. App—Texarkana 2009, no pet.). The petitioner must show the facts establishing standing existed at the time suit was filed in the trial court. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9; *In re S.M.D.*, 329 S.W.3d at 13.

Texas Family Code section 102.003(a)(9) grants standing to file a suit affecting the parent-child relationship to "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9) (West Supp. 2017). In computing the time under subsection (9), the trial court "may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id.* § 102.003(b). Under section 102.003(a)(9), a nonparent has actual care, control, and possession of a child if, for the requisite six-month time period, the nonparent served in a parent-like role by (1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children. *In the Interest of H.S.*, No. 16-0715, 2018 WL 2993873, at *7 (Tex. June 15, 2018). The statute does not require the nonparent to have ultimate legal authority to control the child, nor does it require the parents to have wholly ceded or relinquished their own parental rights and responsibilities. *Id.*

A determination of standing under this section is necessarily fact specific and resolved on an ad hoc basis. *In re M.P.B.*, 257 S.W.3d at 809. Accordingly, such determinations are situations where the trial court is the sole judge of witness credibility and the weight to be given their testimony and we do not disturb the trial court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *See In re I.I.G.T.*, 412 S.W.3d at 806 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) and *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

Here, we acknowledge the evidence regarding standing is minimal and conflicting. Nevertheless, when viewed under the above standard, we conclude it supports the trial court's conclusion that Paternal Aunt had standing to file her petition seeking conservatorship of Y.Z.C.T. The trial court, as the factfinder, was free to believe Paternal Grandmother's testimony that she and Paternal Aunt had care, control, and possession of Y.Z.C.T. since she was three years old, Paternal Grandmother and Aunt had established Y.Z.C.T.'s residence so that she could attend school where Paternal Aunt worked, and Paternal Grandmother and Paternal Aunt were very involved in Y.Z.C.T's life including decisions and participation in Y.Z.C.T.'s education and extracurricular activities. We overrule Mother's sole issue.

Accordingly, we affirm the trial court's judgment.

/Linda Thomas/
LINDA THOMAS
JUSTICE, ASSIGNED

170530F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF Y.Z.C.T., A
CHILD

No. 05-17-00530-CV

On Appeal from the 303rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-15-01039.
Opinion delivered by Justice Thomas. Chief
Justice Wright and Justice Francis
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Chataqua Latrell Smith and Angela Miller recover their
costs of this appeal from appellant Lashondra Dixon.

Judgment entered this 27th day of July, 2018.